**HARTFORD ACCIDENT & INDEMNITY COMPANY, Appellant,**

**v.**

**Henry Francis HADDOCK, Appellee.**

**No. 765.**

Court of Civil Appeals of Texas, Tyler.

June 13, 1974.

Rehearing Denied June 27, 1974.

Sharp, Ward & Ross, Kenneth L. Ross, Longview, for appellant.

Gordon Wellborn & Rex Houston, Blake H. Bailey, Colley & Lloyd, Paul S. Colley, Henderson, for appellee.

MOORE, Justice.

This is a workmen's compensation case. The jury found that appellee Henry Francis Haddock, while in the course and scope of his employment for Leo Silvey Chevrolet Company, on or about August 9, 1971, sustained an injury, and that as a result of such injury appellee suffered total and permanent disability. The trial court ren-dered judgment in keeping with the verdict of the jury in favor of appellee and against appellant Hartford Accident & Indemnity Company in the sum of $18,706.-63. From this judgment appellant Hartford Accident & Indemnity Company duly perfected this appeal.

The record reveals that appellee, who had worked as an automobile mechanic since 1935, was employed by Leo Silvey Chevrolet Company in Overton, Texas, in March, 1971, and worked there as a mechanic until August 9, 1971, when he sustained an injury to his hands while washing autombile parts in a cleaning fluid furnished by his employer. The cleaning fluid caused his hands to swell and turn red. After several days, he consulted Dr. Walter Hart, a physician, who diagnosed his injury as a severe case of "contact dermatitis." Appellee testified that he had never suffered with contact dermatitis before his employment with Leo Silvey Chevrolet Company. Appellee testified that shortly after he finished washing the parts his hands began to puff up and break out in small blisters. He testified that his hands remained in a swollen condition for a week and that the blisters continued to arise and break, causing fluid to ooze out. Finally Dr. Hart confined him to the hospital on August 19. While in the hospital, he testified that the skin came off his hands and it was necessary to use bandages to keep his fingers from growing together. He subsequently developed dermatitis on his arms, shoulders and chest. After being discharged from the hospital on August 25, he was treated by Dr. Hart on August 27, 31 and September 2, 1971. On January 2, 1972, he had a re-occurrence of the dermatitis on his right arm and was again treated by Dr. Hart who advised him that he could not engage in any employment that would bring him in contact with any kind of gasoline products, fuel oil products, oil, gas, greases or any kind of solvents. He suffered a re-occurrence of the rash on his hands on June 12 and June 22 and was again treated by Dr. Hart. In

August, 1972, he secured employment in a retail store selling automobile accessories. While working there, his feet broke out in small blisters and he was unable to wear his shoes. In October, 1972, he returned to his home in Oklahoma and secured employment as a truck driver for John Owen's Construction Company where he worked until July, 1973. He testified that during the time he worked as a truck driver he continued to have trouble with his hands; that the skin on his hands would break causing pain and discomfort, causing him to be unable to sleep. He testified that after leaving Oklahoma he worked about a month driving a tractor shortly before the trial and that he continued to have trouble with his hands.

Dr. Hart testified that he found appellee to be suffering with an acute case of contact dermatitis. He testified that when he first saw him the infection spread half way to his elbow and he also had a rash across his chest. He testified when he last treated him on May 14, 1973, the dermatitis had cleared up but it has resulted in a thinning of the skin on his hands making them more susceptible to injury. He further testified that there was no cure for the disease and that it could only be controlled if appellee would stay away from petroleum products or any other type of detergent, and that he so advised appellee. According to his testimony, appellee suffered total disability which would be permanent.

Dr. Ray McCash, a dermatologist called by appellant, testified that he had treated appellee on January 5, 1972, February 21, 1972, and on June 16 and 26 of 1972. He testified that appellee was suffering from dermatitis affecting the backs of his hands extending up the upper extremities and on the front of his chest. Dr. McCash was of the opinion that his dermatitis was under control at the times he saw him. He testified that while he was of the opinion that appellee was able to work, he would have to secure employment where he could avoid

exposure to anything that might irritate his hands.

The material findings of the jury, in substance, are as follows: (1) that Henry Francis Haddock sustained an accidental injury in the course of his employment for Leo Silvey Chevrolet Company on or about August 9, 1971, (Issues 1, 1A & 1B); (2) that such injury was a producing cause of his total incapacity commencing on August 10, 1971, and that the duration of his total incapacity would be permanent (Issues 2, 2A, 2B & 3); (3) that appellee did not sustain a prior injury in July, 1971, while in the course and scope of his employment for Leo Silvey Chevrolet Company (Issue 5); and (4) that the incapacity of appellee was not caused solely by a pre-existing allergy or disease disconnected with and not aggravated by the injury of August 9, 1971, (Issue No. 8).

Appellant complains by its first point the trial court erred in overruling its objection to the jury. As we view the record, the point is without merit and must be overruled.

The record reveals that the trial commenced on a Tuesday morning. Jury lists consisting of twenty-six jurors were delivered to the parties prior to voir dire examination. During the course of voir dire examination, one of the jurors was found to be disqualified and was excused, thus leaving twenty-five jurors on the list. At the conclusion of the voir dire examination, both parties exercised their peremptory challenges and then delivered their list to the trial judge. The sequence of events which followed are set forth in a statement made by the trial judge upon overruling appellant's objection to the jury, as follows:

"THE COURT: Well, let the record reflect that when the Court came to court at about one thirty and called upon counsel for Plaintiff and counsel for Defendant to deliver their list to the Court, that the Court took the lists, Plaintiff's

list and Defendant's list and checked each list to see that neither Plaintiff or Defendant's counsel had struck more than six Jurors from the list. Having determined that, I passed the list, both the Plaintiff's and the Defendant's list to the Clerk of the Court, and after she had marked two Jurors, I recalled the conversation with Mr. Jardine's wife, of William L. Jardine, number nine on the list, concerning his inability to come back to court, and then I took both lists from the Clerk and called Plaintiff's and Defendant's counsel to the bench, and Mr. Colley responded for the Plaintiff and Mr. Ross for the Defendant, and I informed them of the circumstances and told them that I had excused Mr. Jardine. I observed on the list that neither Plaintiff nor Defendant had struck said prospective Juror, and then proceeded to mark through his name, on each list, and write opposite his name the word excused, and there being no objection voiced from either counsel, the Judge handed both list back to the Clerk and the Clerk proceeded to select the first twelve Jurors, and having done so, the Clerk—the Court again checked the list and then had the Clerk to call the Twelve selected by her marks in red on one of the list, which is the Defendant's list, and had the Clerk call and seat those individuals, and it was not until after the Jury had been sworn and instructed in accordance with Rule 226–A of the Texas Rules of Civil Procedure, and excused until nine o'clock on Wednesday morning that defense counsel informed the Court that they had any objections to the proceedings. Of course, the Court overrules the objection and exception to the Jury at this time."

The record reveals that appellant's sole and only objection to the jury was that it was improperly constituted.

Counsel for appellant stipulated that juror number twenty-six, Gladys Adams, was questioned on voir dire examination prior to the time he exercised his peremptory challenges. Counsel further stipulated that he made no objection when the trial court advised the parties that he had excused the juror or at any time prior to the time the jury was selected and sworn.

We do not believe the ruling of the trial court reflects error. At the time the trial court advised appellant that he had excused another prospective juror from the list, it was obvious that prospective juror number twenty-six (Mrs. Gladys Adams) would serve upon the jury. While appellant now contends that the action of the court forced it to accept Mrs. Adams, who was an objectionable juror, the record fails to reflect that appellant called this matter to the attention of the court either before or after the jury had been selected. Her testimony on voir dire examination is not before us. Consequently there is nothing in the record indicating that appellant made any complaint about the juror in the trial court. Although appellant had a right to request its jury list back in order to re-evaluate its peremptory challenges, or request a mistrial, appellant made no such request. Moreover, contrary to appellant's assertion on appeal that it moved to quash the jury, the record does not reflect that any such motion was made. Since appellant failed to take any action prior to the time the jury was selected and sworn, appellant must be held to have consented the manner in which the jury was selected. Under the circumstances we think appellant waived its right to complain of the jury. Smith v. Morgan, 235 S.W.2d 938 (Tex.Civ.App., San Antonio, 1950, dism.).

Aside from the question of waiver, we fail to see how the court's ruling could have resulted in harm to appellant. There is nothing in the record showing how or why Mrs. Adams or any other juror was objectionable to appellant and there is no evidence that Mrs. Adams or any other juror was in any way prejudiced against appellant. Since there is nothing to show that appellant was required to try the case before an obnoxious juror, we fail to see how any harm could have resulted to ap-

pellant. Rule 434, Texas Rules of Civil Procedure. Gussett v. Nueces County, 235 S.W. 857 (Tex.Com.App.1921); Texas Employers Insurance Association v. Shropshire, 343 S.W.2d 772 (Tex.Civ.App., Texarkana, 1961, ref'd, n. r. e.); Palestine Contractors, Inc. v. Perkins, 386 S.W.2d 764 (Tex.Sup.1964); City of Hawkins v. E. B. Germany & Sons, 425 S.W.2d 23 (Tex.Civ.App., Tyler, 1968, ref'd, n. r. e.)

■ Appellant's second point complains of the action of the trial court in allowing appellee to offer into evidence over its objection the answers to certain interrogatories taken under Rule 168, Texas Rules of Civil Procedure. The foregoing rule provides that the answers to the interrogatories taken under the rule may be used only against the party answering the interrogatories. Appellant takes the position that the court erred in overruling its objection and that the ruling resulted in harm to appellant in that it allowed the appellee to use self-serving declarations for the purpose of bolstering his own credibility. We have concluded that no reversible error was shown.

In order to place the point in its proper prospective, a statement is necessary. The record reveals that appellant took appellee's deposition on January 13, 1973. During the course of the deposition, he repeatedly denied that he had done any work prior to January 13, 1973, while living in Yale, Oklahoma. Upon the trial of the case on September 17, 1973, he admitted that he had worked for John Owen's Construction Company as a truck driver from October, 1972, until July, 1973, while living in Yale, Oklahoma. He further admitted on cross-examination that he had falsely denied four times under oath in his deposition that he performed any work in Oklahoma prior to the time his deposition was taken on January 13, 1973. Immediately after making this admission on cross-examination, counsel for appellant asked him if he had not also answered some "other different questions" on May 14, 1973, under oath, before a notary public in Rusk Coun-

ty, Texas. Counsel then produced an instrument containing the interrogatories and asked appellee if he signed the instrument, which he admitted. Appellant did not offer the interrogatories in evidence. On re-direct examination, counsel for appellee offered the interrogatories stating that they were being offered in rebuttal to the inference that appellee had made false answers about his previous employment in the interrogatories. Over appellant's objection, appellee was permitted to read to the jury seven questions and answers relating to his employment after the taking of his deposition on January 13, 1973. In substance, appellee answered that he had been working for John Owen's Construction Company in Oklahoma as a truck driver since the time his deposition was taken on January 13, 1973, and that his rate of pay was $2.50 per hour. This was substantially the same testimony that he had previously given upon the trial.

■ As we view the matter, the conduct of appellant's counsel in exhibiting the interrogatories before the jury and asking appellant if he had not made sworn answers to "other different questions", coming as it did, immediately after appellee admitted making false statements in his deposition, was calculated to cause the jury to believe that appellee may have also made false answers to the interrogatories as well. If such was not the purpose, there was no reason to bring up the matter. Having gone into the matter and having created in the minds of the jury some doubt as to whether or not appellee also made false answers to the interrogatories, we think appellee was entitled to rebut the inference. Schmick v. Noel, 72 Tex. 1, 8 S.W. 83; McCormick and Ray, 1 Texas Practice, Evidence, Section 621; Houston Fire & Casualty Ins. Co. v. Ford, 241 S. W.2d 158 (Tex.Civ.App., Texarkana, 1951, ref'd., n. r. e.). While Rule 168 provides that the answers to interrogatories may only be used against the party answering same, we do not believe the rule can be used by a party in such manner as to visit

an injustice on his opponent. Under the circumstances, we think the answers to the interrogatories were admissible. At any rate, the admissibility of such evidence was within the sound discretion of the trial court and a judgment cannot be reversed for a ruling in respect thereto, unless it is made to appear that the discretion has been abused in such manner that it can be said that it was calculated to cause and probably did cause the rendition of an improper judgment. Rule 434, Texas Rules of Civil Procedure. No such case is shown by the record before us.

Appellant urges by points three through ten that there is no evidence to support the jury's findings that (a) appellee suffered an (b) accidental injury (c) in the course of his employment (d) resulting in total and (e) permanent disability, or in the alternative, such findings are so clearly contrary to the overwhelming weight and preponderance of the evidence as to be wrong and unjust.

■ As we view the record, there is ample evidence of probative force to support the jury's finding that appellee suffered an accidental injury while in the course of his employment for Leo Silvey Chevrolet Company.

Appellant's principal attack on the verdict is confined to the jury's findings of total and permanent disability. In this connection appellant argues that since appellee's work record since the date of his injury shows that appellee could work and earn money, he cannot be totally and permanently disabled. Therefore, appellant argues that the jury's findings in this respect is without support in the evidence.

In defining the term "total incapacity", the trial court gave the standard definition approved by Texas Employers' Ins. Ass'n v. Mallard, 143 Tex. 77, 182 S.W.2d 1000 (1944), as follows:

"The term 'total incapacity' (or total disability), as used in this charge, does not imply an absolute disability to perform any kind of labor, but a person disqualified from performing the usual tasks of a workman, in such a way as to enable him to procure and retain employment, is regarded as being totally incapacitated, or disabled."

It is true that the record discloses that appellee had worked several months after the date of the injury to his hands in 1971. The evidence, however, further shows that during the time he was performing this work the skin on his hands continued to break, causing his hands to swell, resulting in continual pain and discomfort. Appellee testified that he continued to work only because of economic necessity.

■ It is now well settled that the fact that an injured employee continued to work and make money after his injury is not a bar to recovery for total and permanent disability, if the evidence supports a finding that he is, in fact, so disabled. Texas State Highway Department v. Kinsler, 230 S.W.2d 364 (Tex.Civ.App., Beaumont, 1950, writ ref'd.); Aetna Casualty & Surety Company v. Depositer, 393 S.W.2d 822 (Tex.Civ.App., Corpus Christi, 1965, ref'd., n. r. e.), citing cases. According to the medical testimony of both doctors, the dermatitis resulting from the injury has debilitated the skin on appellee's hands to such an extent that he must never engage in any type of employment in which his hands will be exposed to any type of fuel products, solvents, detergents or any other type of irritant to his skin. According to Dr. Hart, his disability will be permanent and the jury so found. In arriving at this conclusion, the jury no doubt took into consideration the fact that appellee's future employment will be limited to only those types of jobs where his hands will not come in contact with any type of irritating substances. In these circumstances, we think the jury was justified in finding that appellee would be unable to obtain and retain employment performing the usual task of a workman.

The jury's answers, we think, when viewed in a light most favorable to the verdict, are supported by ample evidence. After a review of the entire record, we are of the opinion that the verdict in this regard is not against the overwhelming weight and preponderance of the evidence. In re King's Estate, 150 Tex. 662, 244 S.W.2d 660 (Tex.Sup.1951).

By points eleven through thirteen appellant urges that there is no evidence to support the jury's finding to Special Issue No. 5, and in the alternative that such finding is contrary to the overwhelming weight and preponderance of the evidence. The points are without merit and are overruled.

■ Appellant alleged defensively that appellee suffered a prior compensable injury in July, 1971, while in the employment of Leo Silvey Chevrolet Company. Special Issue No. 5 requested the jury to find whether appellee sustained an injury to his hands in July, 1971, in the course of his employment with Leo Silvey Chevrolet Company. The jury answered in the negative. Thus, the jury found that appellant failed to sustain its burden of proof on the issue. In these circumstances, appellant assumes the burden on appeal of showing that the evidence was sufficient to establish such facts as a matter of law. Smith v. Safeway Stores, 433 S.W.2d 217 (Tex. Civ.App., Tyler, 1968, n. r. e.).

■ In connection with these points, the record reveals that in July, 1971, approximately four weeks before appellee sustained the injury to his hands on August 9, 1971, he accompanied Mr. Leo Silvey to Bossier City, Louisiana, to repair an automobile owned by Mr. Silvey's son. After making the repairs, appellee testified he went into a filling station to wash his hands and used a detergent supplied in the men's room. Shortly thereafter his hands turned red and commenced swelling. On the way back home his hands commenced burning and itching, causing him pain. By the following Monday his hands had swelled to such an extent that he could not return to work. As a result of this incident, he was unable to work for a week. Both appellee and Silvey testified that the trip to Louisiana was on a Saturday afternoon while appellee was not on duty as a mechanic for the company. Silvey testified he requested appellee to accompany him on the trip; that appellee went more or less as a favor; that it was not a part of his job with the company; and that he paid appellee for the work out of his pocket. There is no evidence to the contrary. While the foregoing testimony may be sufficient to show appellee suffered an injury in July, 1971, we think it falls short of conclusively establishing he sustained a compensable injury while in the course and scope of his employment with Leo Silvey Chevrolet Company. In our opinion the evidence shows only that appellee was engaged in a private mission of his own which was not connected with the Leo Silvey Chevrolet Company. Consequently, we do no believe that the evidence is sufficient to conclusively establish that appellee suffered a prior compensable injury while in the employment of the Leo Silvey Chevrolet Company, nor do we believe that the verdict in this regard is contrary to the overwhelming weight and preponderance of the evidence.

Finding no reversible error, the judgment of the trial court is affirmed.