TEXAS EMPLOYERS' INSURANCE ASSOCIATION, Appellant,

v.

Leopoldo S. CERVANTES, Appellee.

No. 16144.

Court of Civil Appeals of Texas, San Antonio.

June 29, 1979.

Gerald R. Ratliff, David T. Edwards, Ratliff & Edwards, San Angelo, for appellant.

Morriss & Sherrill, Sonora, Will A. Morriss, Jr., Morriss, Boatwright & Lewis, San Antonio, for appellee.

## OPINION

CADENA, Chief Justice.

Defendant, Texas Employers' Insurance Association, appeals from a judgment awarding plaintiff, Leopoldo S. Cervantes, compensation for permanent and total disability and ordering that such compensation be paid in a lump sum all in accordance with the jury findings.

Defendant's brief contains 16 points of error. The first 11 points question the legal and factual sufficiency of the evidence to support the finding of permanent and total disability and the finding that payment of compensation in weekly installments instead of a lump sum payment would result in manifest hardship to plaintiff. Points 11 and 12 relate to alleged misconduct of the court in greeting and shaking hands with one of plaintiff's witnesses in the presence of the jury. Point 14 complains of the ruling by the trial court barring a representative of plaintiff's employer from testifying because he had been present in the courtroom in violation of the "rule". Point 15 seeks reversal on the ground that the trial court improperly limited the scope of cross-examination of plaintiff by counsel for defendant, and the last point asserts that the cumulative effect of the alleged errors is such as to require reversal.

Plaintiff, an employee of the Permian Corporation, was injured on April 4, 1973, during the course of his employment as driver of a transport truck. On the day of his injury, plaintiff, after draining the liquid from the tank, noted that the gauge on the tank showed that the tank still contained 170 barrels of liquid. He climbed to the top of the tank to open the hatch and look into the tank to determine if it still contained liquid. When he opened the hatch there was an explosion which blew him off the tank. He reached out and grasped a ladder on the side of the truck and this caused his body to "bounce back" so that his back struck the side of the tank.

## I. SUFFICIENCY OF THE EVIDENCE

There can be no doubt that this court, when faced with a "no evidence" point, will consider only the evidence, and the inferences which such evidence reasonably permits, which will support the challenged findings, disregarding all evidence and inferences to the contrary. *Biggers v. Continental Bus System*, 157 Tex. 351, 303 S.W.2d 359 (1957). On the other hand, an "insufficient evidence" point requires that we consider and weigh all of the evidence, whether it supports the finding or not, to determine whether the finding is so contrary to the overwhelming weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951).

### A. *Disability*

At the time of trial plaintiff was 52 years of age. After he had completed the sixth grade of schooling he began working on a ranch, performing such duties as breaking horses, working stock, etc., all of which he classified as "hard work." He was an artillery man during World War II and after that conflict he worked in the oil fields as a "roughneck floor hand" on drilling rigs. He continued performing work of this nature until January, 1973, when he began working for Permian Corporation (Permian). Until the time of the accident he drove an 18-wheel tractor transport, which he described as a tank which is pulled by a tractor. His job consisted of hauling various liquids to and from oil and gas wells. He described his duties as hard work. Whenever the truck had a flat tire, which occurred often while driving in the fields, it was his responsibility, as the driver, to change wheels.

The undisputed evidence clearly supports the conclusion that plaintiff had always earned his livelihood by performing duties which involved strenuous physical activity.

In May, 1973, about three weeks after the accident, plaintiff resumed working as a truck driver for Permian.. He testified that he was compelled to do so because he was "in a very tight financial position." He was required to pay $300.00 per month for the support of his children by a prior marriage and he listed additional monthly obligations in excess of $500.00 per month.

Prior to the accident he always worked at least a 12-hour shift every day, seven days a week, and often worked a double shift. After the injury he was able to work a full shift "a few times", but when he did so he was "hurting bad." His back was very sore and he had to take medication, prescribed by his doctor, including pain-killers. The pain between his waist and shoulder blades persisted and he suffered from "terrible" headaches once or twice a week. He is unable to do heavy lifting without experiencing pain which is of such intensity that it often makes it impossible for him to sleep at night. He lacks strength in his right arm and right hand and often experiences cramps. As a result, he drops "a lot of things." His right arm gets "shaky" and his shoulder quivers so that, at times, he is unable to hold even a cup of coffee. The skin on his right hand, which was burned, bruises easily and bleeds if he strikes it against anything. His right leg often becomes numb. He had none of these problems prior to the injury. He continued working for Permian until September, 1975, when he left such employment after consulting his doctor.

Plaintiff's present wife operates a restaurant and a convenience store which she purchased with her separate funds. After

leaving Permian, plaintiff attempted to assist in the operation of both enterprises but was unable to be of much help because of his inability to lift things. The pain in his back required that he sit down frequently and he was unable to work an 8-hour shift.

Plaintiff's wife testified about his complaints of pain. After the accident, when plaintiff came home from work he was in great pain. She testified concerning his headaches, numbness in the right leg and pain in the back, and described how his right hand would begin to twitch to such an extent that he could not hold things. On occasions his right shoulder would tremble and "quiver like jello". He was unable to be of much help at the restaurant and the convenience store.

Permian's dispatcher and lead driver worked with plaintiff both before and after the accident. Prior to his injury, plaintiff always worked at least one 12-hour shift daily and often worked a double shift. He described plaintiff as one of his best workers. Also, prior to the injury, plaintiff would haul at least one load a day more than any of the other drivers "as a matter of routine". After the injury, plaintiff often failed to "put in a full day", going home at three or four o'clock in the afternoon. Plaintiff would just "play out on us, just tired", and this witness often sent plaintiff home to rest. After the accident, plaintiff was unable to change wheels on the trucks in case of a flat tire and his fellow workers would have to change wheels for him because of his inability to lift the heavy wheels. Plaintiff often complained of pain and discomfort "about headaches and also his back."

Another of plaintiff's fellow employees testified substantially to the same effect, adding that he observed that plaintiff had difficulty using his hands and legs and was unable to do all the work required of a driver for Permian. This witness said that plaintiff could not "operate like a normal person" after his injury and could not perform his duties "like a normal person."

Dr. Charles F. Brown, who had been plaintiff's doctor for about 13 years, testified concerning plaintiff's complaints of pain in the neck and back, difficulty in moving, pain when lifting, bending, stooping, squatting "and things of that nature." In his examination of plaintiff he found areas of tenderness which are discoverable by palpitation because of the presence of muscle spasms which can be felt by the examiner. This doctor noted outbreaks of shingles along the base of plaintiff's skull, one of the sites of the pain of which plaintiff complains. He described shingles as small blisters that result from the disturbance of a nerve or nerves in the cervical area and said that in reasonable medical probability the shingles were caused by plaintiff's injury.

This doctor testified that plaintiff was disabled from doing any of the heavy kind of work which he had done prior to his injury, and that plaintiff would be unable to pass a physical examination "for any of the oil companies or for any of the oil field work." He stated that in reasonable medical probability plaintiff's condition would not improve and that "in this type of injury, if it isn't beginning to get better in five years, it's more apt to get worse instead of stay the same." During the past five years plaintiff's condition has not improved, and he added, "if anything, his disabilities have become worse."

No extended discussion is required to defend the conclusion that the evidence summarized to this point is some evidence, more than a scintilla, that plaintiff is totally and permanently disabled.

In support of its contention that the evidence is factually insufficient, defendant relies primarily on the fact that plaintiff returned to work about three weeks after the accident and on the testimony of the physician who testified in favor of defendant. Without detailing the testimony of defendant's medical witness, it can be said that he testified that, as of the date of trial, plaintiff was suffering from no disability. This doctor admitted that x-rays of the type he had made in plaintiff's case would not show any serious and permanent injury to nerves and muscles which could result from

an accident such as that in which plaintiff was involved.

In *Trinity Universal Insurance Co. v. Scott*, 342 S.W.2d 348, 349 (Tex.Civ.App.—Fort Worth 1961, writ ref'd n. r. e.), the court said that where there is prima facie evidence which supports a finding of total and permanent disability the judgment will not be reversed "merely because there is evidence in the same record which establishes that the disabled employee is in fact working and earning money", and that this is "true regardless of the amount of money being earned." *See also, Texas Employers' Insurance Ass'n v. Wilson*, 563 S.W.2d 685 (Tex.Civ.App.—Fort Worth 1978, no writ); *Liberty Mutual Insurance Co. v. Rodriguez*, 537 S.W.2d 522 (Tex.Civ.App.—San Antonio 1976, no writ). The evidence here is clearly sufficient to support the conclusion that plaintiff's attempt to return to his former employment was in response to economic necessity.

The conflict in the testimony of the two expert witnesses did no more than create an issue of fact which the jury resolved in favor of plaintiff. We cannot say that the jury finding of permanent and total disability is so contrary to the weight and preponderance of the evidence as to be manifestly unjust. *See State Highway Department v. Maris*, 532 S.W.2d 690 (Tex.Civ.App.—Texarkana 1976, no writ); *Texas Employers' Insurance Ass'n v. Washington*, 437 S.W.2d 340 (Tex.Civ.App.—Dallas 1969, writ ref'd n. r. e.).

### B. *Lump Sum Payment*

Defendant asserts that the finding that payment of compensation in weekly installments would result in manifest hardship cannot stand in view of the evidence that plaintiff owns three mobile homes which he rents to tenants and that he has additional income derived from assisting his wife in the operation of the convenience store. Defendant also calls our attention to the fact that plaintiff, in order to become a candidate for the office of county commissioner, posted a $300.00 filing fee.

At the present time, plaintiff's child support payments have been reduced to $150.00 per month. He owes on two notes in the aggregate sum of $20,000.00. Another outstanding indebtedness is in the amount of $1,000.00, calling for payments of $100.00 per month. His net income from the mobile home park is $40.00 per month. He has nothing to do with the restaurant and convenience store owned by his wife and does not know what income is derived from such operations. He receives no pay for his efforts to help his wife. One of his children wants to go to college and he is anxious to give this child a college education as he has done for all his other children. The amount he would receive as compensation under the statute if payable in weekly installments would be $49.00 per week, less $12.25 payable to his attorney. The amount of monthly payments specifically enumerated by plaintiff is in excess of $500.00 per month.

The question of payment in a lump sum is a matter left largely to the discretion of the trier of fact. *Texas Employers' Ins. Ass'n v. Long*, 180 S.W.2d 629 (Tex.Civ.App.—Austin 1944, writ ref'd w. o. m.). It has been pointed out that the courts of this state have uniformly held that the payment " 'of lump sum is to be determined as a matter of opinion, rather than as a matter of fact based upon the evidence in the more usual sense.' " *American General Ins. Co. v. Ariola*, 187 S.W.2d 585, 588 (Tex.Civ.App.—Galveston 1945, writ ref'd w. o. m.). *See also, Texas Indemnity Ins. Co. v. Arant*, 171 S.W.2d 915, 918 (Tex.Civ.App.—Eastland 1943, writ ref'd w. o. m.). In this case, unlike the situation before the court in *Federal Underwriters Exchange v. Hinkle*, 167 S.W.2d 307 (Tex.Civ.App.—Fort Worth 1942, writ ref'd w. o. m.), the evidence supports the conclusion that plaintiff is not able to work and make a living for himself.

We are not inclined to disturb the jury finding.

### II. MISCONDUCT OF COURT

Counsel for defendant orally moved for a mistrial on the ground that as plaintiff's medical expert left the stand the trial judge reached out and shook hands with

him. Assuming that counsel's statement establishes that the court did shake hands with the witness and that such action was improper, we cannot hold that the act prevented defendant from receiving a fair trial.

### III. BARRING TESTIMONY BY "REPRESENTATIVE"

■ Defendant called, as its second witness, Aubrey Pool. Plaintiff's objection on the ground that the rule had been invoked and that the witness had been present in the courtroom at all times was sustained and the witness was not permitted to testify.

Defendant at no time informed the court that this witness, an employee of Permian, would be sitting at the counsel table as a "representative" of defendant in order to assist counsel. No request was made that the witness be excused from the operation of the rule.

Rule 267, Tex.R.Civ.P., provides that when the "rule" has been invoked in a case where a corporation is a party to the suit "the court may exempt from the rule an officer or other representative of such corporation to aid counsel in the presentation of the case." Had Pool been identified at the outset as both the "representative" of defendant and a witness, plaintiff had the right to move that he be placed under the rule and excluded from the courtroom, since Rule 267 clearly vests the trial court with discretion to exempt such representative from the rule. At that time, the trial court could have inquired into the surrounding circumstances and determined whether such representative should be allowed to remain in the courtroom. Had plaintiff successfully moved that Pool not be allowed to remain in the courtroom, the exclusion of the witness would not have been disturbed absent a showing of abuse of discretion. *See Missouri Pacific Railroad Co. v. Cunningham*, 515 S.W.2d 678, 685 (Tex.Civ.App.—San Antonio 1974, no writ); *Texas & New Orleans Railroad Co. v. Ivey*, 283 S.W.2d 78, 81–82 (Tex.Civ.App.—El Paso 1955, no writ).

Defendant cannot be allowed, by his failure to call the court's attention to the dual status of Pool as representative and witness, to curtail the court's discretion in determining whether Pool would be allowed to remain in the courtroom and to also testify. The record does not reflect that no other employee or representative of defendant or of Permian was available at the site of the trial who would have been able to sit in the courtroom and assist defendant's counsel. The record, in fact, reflects the contrary, since the testimony of defendant's first witness indicates that several other employees of Permian knew as much about the case as did Pool.

According to defendant's bill of exception, Pool would have testified only that he saw plaintiff at work after his injury and that plaintiff "did a very good job." Defendant's first witness testified substantially to the same effect and added that he had seen plaintiff, after his injury, change tires on the truck without help from any other person. We do not have here, as was the case in *Johnson v. Cooley*, 30 Tex.Civ.App. 576, 71 S.W. 34, 37 (Galveston 1902, no writ), a situation where the barred witness was the only source from whom the testimony could be elicited. Substantially the same testimony had been elicited from another defense witness and the record shows that other persons had observed plaintiff at work after his injury.

No abuse of discretion is shown.

### IV. RESTRICTION OF CROSS–EXAMINATION

■ Point 15 states that during defendant's cross-examination of plaintiff, the trial court refused to permit questions concerning statements made by plaintiff to Dr. Cecil M. French in the course of a routine physical examination.

The record reflects that during this portion of the attempted cross-examination counsel for defendant had in his hand an instrument which he said was the report of a physical examination of plaintiff made by Dr. French. The extended argument concerning the proper scope of cross-examina-

tion is rather confusing, since at times the attorneys and the court appear to have been discussing the admissibility of Dr. French's report, while at other times the discussion concerned the right of defendant to question plaintiff concerning the statements plaintiff made to Dr. French during the course of such examination. At one point the court said that questions as to statements made by plaintiff to the doctor were admissible.

Counsel for defendant asked plaintiff if it was not a fact that he had told Dr. French that he had had "no trouble with" his "head or spinal injuries." The witness replied that he did not recall making such statement. At this point plaintiff's counsel objected and there followed a long discussion but the record reflects no ruling by the court. Dr. French was not called as a witness nor was any effort made to introduce his report in evidence.

It is clear that defendant was allowed to ask the question concerning previous head or spinal injuries and the witness simply answered that he recalled making no such statement. Defendant does not, in its brief, call our attention to any other specific questions which concerned statements made by plaintiff to Dr. French and which defendant was precluded from asking. If there were, in fact, such questions, there is no bill of exception revealing what the witness would have answered. There is no error.

Defendant's final contention that the cumulative result of the "errors" committed by the trial court deprived defendant of a fair trial is without merit.

The judgment of the trial court is affirmed.