**CITY OF McALLEN, Texas, Appellant,**

v.

**Bernardino ALVARADO, Appellee.**

**No. 13–86–141–CV.**

Court of Appeals of Texas,
Corpus Christi.

Oct. 16, 1986.

B. Buck Pettitt, James E. Darling, Law Offices of James E. Darling, McAllen, for appellant.

A.A. Munoz, II, McAllen, for appellee.

Before NYE, C.J., and KENNEDY and BENAVIDES, JJ.

## OPINION

NYE, Chief Justice.

This is a worker's compensation case. Appellant city, self-insured, appealed an award of the Industrial Accident Board. A jury found that appellee workman was totally and permanently incapacitated, and that compensation payments should be paid in a lump sum. Appellant's first three points of error challenge the legal and factual sufficiency of the total and permanent incapacity finding. The last three points of error challenge the legal and factual sufficiency of the lump sum finding. After considering all the points of error, we affirm.

Appellant argues that the fact appellee returned to the same job he was performing at the time of the injury and was able to retain that job proves as a matter of law, or at least by overwhelming evidence, that he is not totally and permanently disabled. A recitation of the facts is necessary.

At the time of trial, appellee was a sixty-two-year-old man. He had only a first-grade education, and could not speak or read English. He had been working for the City of McAllen since 1978. At the time of the accident, and at the time of trial, he was working as a garbage collector, which entailed riding on the back of a garbage truck, stepping on and off, grabbing trash cans and emptying their contents into the truck. The job required these tasks to be done rapidly.

While riding on the back of a garbage truck in the rain, appellee lost his grip and fell, hitting his head and knocking himself unconscious. He testified that when he regained consciousness at the hospital he could not move his right side, his head

ached, he was dizzy and nauseous, his left ear hurt and he had a loss of hearing. He was unable to work for two weeks. He said his doctor released him to go back to work at "a job that was easy."

He returned to the same job he was performing at the time of the accident. He testified he went back to the same job because of economic necessity. Six of his eleven children still lived at home, and he provided the family's sole support. He experienced problems upon returning to work. His headaches increased and he experienced dizziness, memory lapses, and difficulty with his hearing and vision. He took medication for the headaches, but it made him sleepy so he only took it at night when there was no risk of falling asleep on the job.

He testified that he had not been able to work steadily because of his injury. He said he often had to leave work, and some days he was unable to come to work at all. His dizziness had caused him to fall twice while at work, once injuring his knee and once hitting his head again. He said the dizziness hindered his concentration. His fellow workers assisted him by picking up trash cans on his side of the truck. He stated that he did not trust his driving and drove "very little." He did not think he could get another job because no one would hire him if they knew his physical condition. He said if the city terminated him, "it would be very difficult" for him to get another job.

On cross-examination, he testified that he had been working at the same job since December 22, 1981, and that he had received three or four regular pay raises since the injury. He testified his doctor had told him he could go back to easier work.

Appellee's wife testified that he had not been the same since the accident, that she had noticed changes in his personality, and that he did not do things around the house like he used to. She thought that he should not be working, but he did so in order to support his family.

Dr. Cesar Luis, a neurologist and neurosurgeon, first saw appellee in the hospital emergency room after the accident. He testified that when appellee regained consciousness he complained of a headache, cervical pain, dizziness and loss of hearing in his left ear.

He treated appellee conservatively because he did not detect any focal neurological deficits. Appellee was hospitalized for two days, his condition improved, and he was discharged with a final diagnosis of post-concussion syndrome and post-traumatic vertigo, which meant he had sustained chemical damage to his brain due to the blow to his head. On subsequent visits, Dr. Luis detected a loss of memory, confusion, a loss of hearing, tinnitus (ringing in the ears), and dizziness. Appellee's headaches became more localized in both occipital areas. He also detected blurred vision in both eyes and referred appellee to an ophthalmologist.

As to the prognosis, Dr. Luis testified that, in his opinion, "the injury to the brain was more than we anticipated" because appellee had not improved more. Appellee's condition had not changed much since the third month after the accident. According to Dr. Luis, brain cells cannot regenerate when they have been totally damaged, and appellee's persistent symptoms indicated that the damage to his eighth nerve was "quite severe," and that those cells would not regenerate. He said appellee's condition could not be cured, only treated symptomatically. He testified, "[T]here is no reason to think that he's going to get better" as it had "been too long to hope for any change...."

Dr. Luis stated that he had not released appellee to do "any kind of work that might be dangerous." He considered the job of collecting trash to be dangerous because appellee could become dizzy at work and fall. He added that appellee should not drive or operate machinery.

On cross-examination, Dr. Luis testified that performing the usual tasks of a worker would not aggravate appellee's condition. He answered affirmatively when

asked if appellee could perform the usual tasks of a workman as long as the tasks were not dangerous. On redirect examination, he said that appellee's problems probably would affect his ability to work.

Dr. Ruben Salinas was the ophthalmologist who treated appellee. He testified that ten months after the injury he diagnosed a traumatic cataract in appellee's left eye which, in all medical probability, was caused by the fall. He said appellee's vision in his left eye had gotten progressively worse, with his visual acuity being around 20/2200. He characterized appellee as legally blind in that eye. He also testified the cataract was permanent. Based upon appellee's vision problems, Dr. Salinas stated he would not pass him in a pre-employment physical.

Dr. Salinas said he did not think appellee should be hanging on the back of a garbage truck. He explained that, according to him, appellee's "main problem" was a "lack of depth perception." He answered affirmatively when asked whether the lack of depth perception and the blindness in one eye meant that appellee would be subjecting himself to risks in performing the usual tasks of a worker that an able-bodied worker would not. On cross-examination, he admitted that the loss of sight in one eye does not disable a person from performing the usual tasks of a worker.

Maria Rodriguez, Personnel Director of the City of McAllen, testified that appellee had missed work due to his injury. Her records indicated that appellee had missed work on approximately fourteen occasions in 1985 because of the injury in question. The city had discarded the records for prior years. Appellee was not employed under a contract and could be terminated at any time. She stated that, based upon the testimony she heard, "it would be dangerous for [appellee] to continue his job." Her records also indicated that appellee had fallen at work twice in 1985, sustaining both a knee injury and another head injury.

In considering a "no evidence" or "insufficient evidence" point of error, we will follow the well-established test set forth in

*Dyson v. Olin Corp.*, 692 S.W.2d 456 (Tex. 1985); *Glover v. Texas General Indemnity Co.*, 619 S.W.2d 400 (Tex.1981); *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965); *Allied Finance Co. v. Garza*, 626 S.W.2d 120 (Tex.App.—Corpus Christi 1981, writ ref'd n.r.e.); Calvert, *No Evidence and Insufficient Evidence Points of Error*, 38 Texas L.Rev. 361 (1960).

■■■ To recover for total and permanent incapacity, a worker must prove that he is disabled to such an extent that he is disqualified from performing the usual tasks of a worker and cannot get and keep employment. *Texas Employers' Insurance Association v. Mallard*, 143 Tex. 77, 182 S.W.2d 1000, 1001 (1944); *Commercial Insurance Co. v. Puente*, 535 S.W.2d 948, 952 (Tex.Civ.App.—Corpus Christi 1976, writ ref'd n.r.e.). There is no fixed rule of evidence by which to prove permanent disability. Proof of the extent and duration of a disability must be determined by a jury based on all the pertinent facts. *Navarette v. Temple Independent School District*, 706 S.W.2d 308, 310 (Tex.1986); *Texas Employers' Insurance Association v. Williams*, 662 S.W.2d 728, 732 (Tex.App. —Houston [14th Dist.] 1983, no writ).

■■■ It has long been held that evidence that a claimant continued to work and earn money after an injury does not conclusively establish that the claimant is not totally and permanently disabled, and such a fact will not bar recovery if the evidence otherwise supports a total and permanent disability finding. *Aetna Casualty and Surety Co. v. Depoister*, 393 S.W.2d 822, 830 (Tex.Civ.App.—Corpus Christi 1965, writ ref'd n.r.e.), and cases cited therein; *see Texas Employers' Insurance Association v. Draper*, 658 S.W.2d 202, 206 (Tex. App.—Houston [1st Dist.] 1983, no writ); *Hartford Accident and Indemnity Co. v. Haddock*, 511 S.W.2d 102, 107 (Tex.Civ. App.—Tyler 1974, writ ref'd n.r.e.); *Texas State Highway Department v. Kinsler*, 230 S.W.2d 364, 367 (Tex.Civ.App.—Beaumont 1950, writ ref'd); *see also Navarette*, 706 S.W.2d at 310.

■ This principle applies even if the claimant returns to the same job and receives an increase in pay, because these factors are only a part of the evidence a jury may consider in determining capacity and disability, and do not preclude an award for total and permanent incapacity. *See Texas Employers' Insurance Association v. Armstrong*, 572 S.W.2d 565, 566 (Tex.Civ.App.—Eastland 1978, no writ). This is particularly true where the claimant returned to work after an injury out of hardship and economic necessity. *Liberty Mutual Insurance Co. v. Peoples*, 595 S.W.2d 135, 137 (Tex.Civ.App.—San Antonio 1979, writ ref'd n.r.e.); *International Insurance Co. v. Torres*, 576 S.W.2d 862, 867 (Tex.Civ.App.—Amarillo 1978, writ ref'd n.r.e.).

Appellant argues that *Commercial Insurance Co. v. Puente*, 535 S.W.2d 948, controls the disposition of the instant case. We disagree. *Puente* involved a trash collector who sustained a back injury when he fell from a truck. The employee eventually underwent surgery and returned to the same employer, but performed lighter work. This Court reversed the total and permanent disability finding in *Puente* and remanded the case for a new trial, because "the overwhelming evidence from this record shows that appellee's condition does not and has not prevented him from obtaining and retaining permanent and lucrative employment calling for lighter duties which lighter duties he is able to perform full time." *Id.* at 953. These distinctions are significant enough to justify a different result in the instant case.

The rule of appellate review in determining the sufficiency of the evidence is to consider all the evidence in the record. Here, both doctors who treated appellee testified that his condition was permanent and that he should not be working as a trash collector. The medical testimony established that, as a result of his head injury, appellee was blind in one eye, had no depth perception, and suffered from dizziness, tinnitis, amnesia, confusion, an inability to concentrate, hearing diminution, and headaches. Appellee testified that his condition inhibited his ability to perform his particular job and had caused him to sustain subsequent on-the-job injuries. He believed, with some reason, that his condition would prevent him from getting another job. Appellant's personnel director testified that it would be too dangerous for him to retain his present job. All of the witnesses testified that his condition was not likely to improve.

■ Based on all of the evidence in the record, we find that there was ample evidence to justify the jury's finding that appellee's condition was permanent and disabling to such an extent that he could not perform the usual tasks of a worker and could not obtain and retain employment.

Appellant also complains that there is no evidence, or insufficient evidence, to support the jury's finding that payment of compensation in weekly installments would result in manifest hardship and injury to appellee. Appellant contends that any manifest hardship suffered by appellee was of his own making and had nothing to do with his disability caused by an on-the-job injury, because he had been gainfully employed at the same job and at increased pay ever since the accident.

■ TEX.REV.CIV.STAT.ANN. art. 8306, § 15 (Vernon Supp.1986) provides that, [W]here in the judgment of the Board [or trier of fact] manifest hardship and injury would otherwise result, the Board [or trier of fact] may compel the association to redeem the liability by payment of the award ... in a lump sum...." The question of a lump sum payment is left to the sound discretion of the trier of fact, in this case, the jury. *Texas Employers' Insurance Association v. Cervantes*, 584 S.W.2d 376, 380 (Tex.Civ.App.—San Antonio 1979, writ ref'd n.r.e.); *Texas Employers' Insurance Association v. Long*, 180 S.W.2d 629, 633 (Tex.Civ.App.—Austin 1944, writ ref'd w.o.m.). A jury's finding on this issue should not be reversed unless there is shown a manifest abuse of discretion. *Federal Underwriters Exchange v. Brigham*, 184 S.W.2d 849, 856 (Tex.Civ. App.—El Paso 1944, writ ref'd w.o.m.). The lump sum issue is more a matter of opinion rather than a matter of fact based

upon the evidence. *Cervantes*, 584 S.W.2d at 380; *American General Insurance Co. v. Ariola*, 187 S.W.2d 585, 588 (Tex.Civ. App.—Galveston 1945, writ ref'd w.o.m.). Further, the fact that a claimant has worked and earned money since the injury is, again, merely a fact for the jury to consider when deciding the issue. *Texas Employers' Insurance Association v. Dimsdle*, 440 S.W.2d 359, 367 (Tex.Civ. App.—Dallas 1969, writ ref'd n.r.e.).

The record reflects that, at the time of trial, appellee was sixty-two years old and had three children still living at home. He was suffering from financial problems. His wife had a heart condition, and one of his daughters was college-age, but he could not afford to send her to college. He owned his own home, but could not afford to finish it. He provided the sole support for the family. Again, the jury's finding that the workman was totally and permanently incapacitated is amply supported by the evidence. As such the jury did not manifestly abuse its discretion by finding that the payment of compensation in weekly installments would result in a manifest hardship to appellee.

The judgment of the trial court is affirmed.