**TEXAS EMPLOYERS' INSURANCE
ASSOCIATION, Appellant,**

v.

**W. E. ALLEN, Appellee.**

No. 923.

Court of Civil Appeals of Texas,
Corpus Christi.

Jan. 30, 1975.

Rehearing Denied Feb. 20, 1975.

James W. Wray, Jr., Dyer, Redford, Burnett, Wray & Woolsey, Corpus Christi, for appellant.

James A. Smith, Allison, Maddin, White & Brin, Inc., Corpus Christi, for appellee.

OPINION

BISSETT, Justice.

This is a workmen's compensation case. Following a jury trial, judgment was ren-

dered for W. E. Allen, plaintiff, which awarded him weekly compensation benefits for total and permanent incapacity which resulted from a heart attack found by the jury to be the result of an accident received in the course of his employment on December 22, 1969. Texas Employers' Insurance Association, defendant, has appealed.

The primary question to be resolved is whether or not the failure by plaintiff to timely file his claim for compensation with the Industrial Accident Board was excused by good cause. The claim was filed with the Board on April 12, 1972, two years and three months after the accident. It was denied by the Board, and plaintiff appealed that decision.

Among other findings, the jury found that plaintiff had a heart attack on or about December 22, 1969 (Special Issue 1); that plaintiff "had no medical evidence that his heart attack was caused by his employment or hazards related to his employment prior to April 12, 1972" (Special Issue 13); that the "lack of such medical evidence . . . caused plaintiff to delay filing a claim for compensation with the Industrial Accident Board until such claim was filed" (Special Issue 14); and that such lack of medical evidence "constituted good cause for his delay in filing his claim with the Industrial Accident Board of Texas for compensation until April 12, 1972" (Special Issue 15).

Defendant presents nine points of error. Included therein are points that the court erred in overruling its motion for judgment non obstante veredicto and in entering judgment for the plaintiff because the evidence shows as a matter of law that plaintiff's failure to file his claim for compensation within six months of the date of his injury was not excused by good cause (Points 1 and 3), and because plaintiff failed to secure jury findings that his failure to file a claim for compensation within six months of his injury was excused by good cause "for such failure existing continuously from the date of the injury to

the date of filing of claim for compensation" (Point 2). Defendant also attacks the judgment on the grounds that the jury's answer to Special Issue 14 is not supported by any evidence (Point 6). Defendant further contends that the lack of medical evidence as inquired about in Special Issue 15 cannot, as a matter of law, constitute good cause for failure to timely file the claim for compensation (Point 9).

Plaintiff, at all times pertinent to this appeal, was employed by Aluminum Company of America (Alcoa). On December 22, 1969, plaintiff, a foreman, went to the assistance of two workmen who were attempting to free "a chunk of electrode" that was estimated to weigh between 100 and 150 pounds. Plaintiff, in relating what then occurred, said:

" . . . While we were pulling on this thing, I had this real sharp sticky pain in my chest and it ran down both arms and my left arm in particular was painful. I didn't think too much about it, but I thought something had happened. . . ."

The incident occurred sometime between 11 and 11:30 o'clock a. m. After the job was finished, plaintiff rode his bicycle to the office, where he told another employee that he had a terrific pain in his chest. After the passage of some 30 to 45 minutes, the pain "slacked up", but he still "had this feeling in my arms and chest".

Plaintiff, upon arrival at his home after completing his work-shift at 4 o'clock p. m. on December 22, 1969, told his wife that he "just didn't feel good". He told her about the pain in his chest. He went to bed. His wife called Dr. J. C. Howard, who came out to plaintiff's home, and after examination, told plaintiff that he felt sure that he (plaintiff) had had a heart attack. The doctor told plaintiff to stay in bed and to come to the hospital the next morning for a thorough examination. Plaintiff complied, and after examination the diagnosis of heart attack was confirmed by Dr. Howard. Plaintiff was hospitalized for 31

days. He then returned to his home, where, according to his wife, "he just stayed around home" and rested and tried to recuperate from this heart attack. He never did go back to work for Alcoa.

Dr. Howard was selected by plaintiff and had no connection with either Alcoa or defendant, the compensation carrier for Alcoa. Following the hospitalization, Dr. Howard prescribed certain medication for plaintiff, limited his activities, and suggested bed rest "most of the morning and the afternoon". He did not describe the severity of the heart attack, in detail, to plaintiff, nor did he ever intimate to plaintiff that there might be a connection between his heart attack and the exertion to which he had been subjected on the job.

Mrs. Allen testified that plaintiff, upon his return to his home following the completion of his work-day on December 22, 1969, told her what had happened earlier in the day. She said that he told her that the pulling on the portion of the electrode that was stuck caused an unusual and extraordinary amount of exertion on his part, that it was out of the ordinary, that he felt pain running down his arm while he was so engaged, and when asked:

"He specifically made a connection and related a connection to you between the occasion of his using this bar and exertion on the metal, and the pain that struck him?"

She replied:

"Yes".

Plaintiff testified that there was never any question or doubt in his mind but that "the heart attack was a serious condition", that he realized "it was serious from the very first," that he didn't really know what happened to him, and that he "had never had an attack before". He further testified that he knew whatever happened to him on December 22, 1969 "was not trivial or unimportant". He also stated he was aware that he had received an injury on the job, that he knew he had strained himself, and that he immediately started having pains in his chest. When asked to tell "every reason" why he did not file his claim for compensation within six months following his injury on December 22, 1969, he said:

"My doctor and I—I felt at all times that I was going to be able to come back to work. That was in my sights. I was planning to come back to work and I was progressing slowly but I was progressing just the same, until some time along in—well, I thought I was progressing all the time".

He mentioned that some three or four months in advance of October 1970, Dr. Howard told him that he "might be able to go back to work in October". When he could not go back to work at that time, he asked the doctor why, and was told:

"Well, we're just going to have to play it by ear and wait and see".

In early April, 1972, plaintiff was informed by Alcoa he had to either "come back to work or sign a letter of resignation". He then asked Dr. Howard about his condition, who told him:

"I'm going to tell you right now and then that I'll never release you to go back to work".

Plaintiff consulted an attorney on April 12, 1972, who then filed a claim with the Industrial Accident Board.

■■■ A claim for compensation is required by Vernon's Tex.Rev.Civ.Stat.Ann. art. 8307, § 4a, to be filed with the Industrial Accident Board of Texas within six months after the occurrence of injury; but in meritorious cases good cause will excuse delay in filing the claim. Copinjon v. Aetna Casualty & Surety Co., 242 S.W. 2d 219 (Tex.Civ.App.—San Antonio 1951, writ ref'd). Failure to file a claim within six months from the date of injury will bar a recovery of workmen's compensation benefits unless there is a showing of good cause, which must be continuous and must

exist up to the date the claim is filed. Texas Casualty Insurance Company v. Beasley, 391 S.W.2d 33 (Tex.Sup.1965); Texas Employers Insurance Ass'n v. Hancox, 162 Tex. 565, 349 S.W.2d 102 (1961). Good cause for delayed filing exists in this case only if an ordinary prudent person under the same or similar circumstances shown to exist by plaintiff would have delayed filing a claim. Moronko v. Consolidated Mutual Insurance Co., 435 S.W.2d 846 (Tex.Sup.1968).

In Texas Employers' Ins. Ass'n v. Portley, 153 Tex. 62, 263 S.W.2d 247, 250 (1953), the plaintiff was seriously injured in the course of his employment on March 1, 1950, but claim for compensation was not filed until March 29, 1951. His excuse was that he did not realize the seriousness of his injury and thought he was going to be all right. There, plaintiff's condition, caused by an injury to his foot, began to worsen within a few weeks after the injury. The plaintiff attempted to bring himself under the rule announced in cases where it is said that a good faith belief that injuries are not serious, but are trivial, will constitute good cause for delaying the claim for compensation and the fact that constant pain exists does not affect the issue. The Supreme Court, however, noted that those cases make clear that delay may not be excused unless the belief that the injury or condition was not serious would have been entertained by a reasonably prudent person in the same or similar circumstances. The court said:

> " . . . the plaintiff had a manifestly serious and disabling condition of which he was fully aware. At the very least, it was a condition which we hold should and would have led any reasonably prudent person under the same or similar circumstances to protect his rights by filing his claim. . . . "

The same thing was said of the fact situation which existed in Aetna Casualty and Surety Company v. Hughes, 497 S.W.2d 282 (Tex.Sup.1973), where the failure of the injured workman to timely file his claim was based on the fact that, even though he knew that he had sustained serious injuries, he thought his condition would improve, and because "the doctor kept telling me I was going to be better". The facts and conditions relating to "good cause" are much more favorable to the claimant in the Hughes case than they are to plaintiff in the case at bar.

Plaintiff cites Liberty Mutual Insurance Company v. Wilson, 495 S.W.2d 579 (Tex. Civ.App.—Texarkana 1973, writ ref'd n. r. e.) for the proposition that although he knew he had had a heart attack, he did not know and did not have any medical information that his heart attack was caused by what happened on December 22, 1969. The Wilson case is distinguishable from the instant case. There, the evidence showed that Mrs. Wilson believed her injury at work caused her incapacity, but there was evidence that the employer and insurance carrier advised her that her condition was not job connected, and that two physicians, who were recommended by her employer, and one, not so recommended, were unanimous in an opinion of like effect until an independent physician advised her that the injury on the job was the cause of her incapacity. On receiving that information, Mrs. Wilson immediately filed her claim with the Industrial Accident Board. The Court of Civil Appeals held that good cause existed for the delay in filing the claim. The distinction between the Wilson case and this case is that in *Wilson* there were several affirmative medical opinions that such disability was *not* job connected, whereas, here, plaintiff's doctor did not tell him that his incapacity was or was not job related.

■ It is conclusively established by the evidence that plaintiff knew that he suffered a disabling injury on December 22, 1969, that it was serious, and that he sustained the injury while working for his

employer. The only reasonable conclusion that he could have drawn from the facts and circumstances presented by the record was that his heart attack was directly related to the pulling on the bar in the effort to free the portion of the electrode that was stuck. The only excuses advanced by plaintiff for the late filing were that he expected to go back to work, and that the doctor never did tell him that his heart attack was job related.

Taking as true only the evidence here presented which is favorable to plaintiff, we hold that plaintiff's action in delaying the filing of his claim until April 12, 1972, a period of two years and three and one-half months following the injury, does not meet the standard of ordinary prudence. This appears as a matter of law. The facts testified to by plaintiff conclusively show that he sustained an injury and suffered from a condition which should and would have led any reasonably prudent person under the same or similar circumstances to protect his rights to compensation by timely filing his claim for compensation. Good cause for the filing thereof does not exist, and plaintiff did not meet the burden required of him. Defendant's motion for judgment non obstante veredicto should have been sustained. Defendant's points 1, 2 and 3 are sustained.

Special Issue 14, wherein the jury found that "the lack of such medical evidence" caused plaintiff to delay the filing of the claim is not supported by any evidence. The "lack of such medical evidence" cannot, as a matter of law, constitute good cause for plaintiff's delay in filing his claim until April 12, 1972. Accordingly, defendant's points 6 and 9 are sustained.

In view of the foregoing, it is not necessary that we pass on defendant's remaining points of error. The judgment of the trial court is reversed and judgment is here rendered that W. E. Allen, plaintiff, take nothing by his suit against Texas Employers' Insurance Association, defendant.

Reversed and rendered.