**CITY OF SAN ANTONIO, By and Through its Agent, CITY PUBLIC SERVICE BOARD, Appellant,**

**v.**

**Jose S. MIRANDA, Appellee.**

**No. 04–83–00410–CV.**

Court of Appeals of Texas, San Antonio.

Nov. 30, 1984.

Rehearing Denied Dec. 26, 1984.

Raul M. Calderon, Matthews & Branscomb, San Antonio, for appellant.

Lawrence G. Morales, San Antonio, for appellee.

Before ESQUIVEL, TIJERINA and DIAL, JJ.

## OPINION

TIJERINA, Justice.

This is an appeal from a judgment in a worker's compensation case. Appellant, a self-insured city, filed suit to set aside the award of the Industrial Accident Board and appellee counter-claimed for worker's compensation benefits. The jury found that appellee was totally and permanently incapacitated, awarding compensation in the sum of $35,757.08. Appellant's motion for judgment notwithstanding the verdict and motion for new trial were overruled.

It is undisputed that appellee sustained an injury to his right shoulder on January 25, 1978, while in the course and scope of his employment for appellant. Appellee was assigned to the Overhead Construction Division, and on the date of the accident he was operating a jack hammer. The stem of the jack hammer broke, causing appellee to fall and strike his right shoulder against the hammer's handle. The worker testified he had continuous pain and worked with pain since the date of the injury. He first consulted a physician several days after the accident and was told that he had a pulled muscle. He continued to work and in December, 1978, he had gall bladder and

hernia surgery. In March of 1980, Dr. Williams performed rotator cuff surgery on appellee's right shoulder and repaired a rotator cuff tear. The doctor testified that the disability to appellee's right upper extremity was permanent and that future surgery was indicated. Appellee filed his claim for compensation with the Industrial Accident Board on June 1, 1979.

In points of error one through five appellant complains that the trial court erroneously entered judgment based on the jury's answers to special issues one, two, and three. Appellant contends that there was no evidence or insufficient evidence to support the finding that appellee was totally incapacitated. Appellant further argues that appellee judicially admitted he was not totally incapacitated. The pertinent special issues and jury answers are as follows:

### Special Issue No. 1

Do you find from a preponderance of the evidence that Plaintiff's injury of January 25, 1978, was a producing cause of any total incapacity?

"Total incapacity" does not imply absolute inability to perform any kind of labor, but means that one is disabled from performing the usual tasks of any particular trade or occupation, to such an extent that he cannot get or keep employment.

Answer "Yes" or "No."

Answer: Yes

### Special Issue No. 2

What do you find from a preponderance of the evidence to be the beginning date of such total incapacity, if any, sustained by Plaintiff?

Answer: January 25, 1978

### Special Issue No. 3

Do you find from a preponderance of the evidence that the total incapacity, if any, sustained by Plaintiff as a result of the injury of January 25, 1978, has been and will be permanent or has been or will be temporary?

Answer "Permanent" or "Temporary."

Answer: Permanent

Our initial task is to address the no evidence point. We are required to view the evidence in the light most favorable to the verdict, and to consider only the evidence and inferences that support the verdict. *Freeman v. Texas Compensation Insurance Co.*, 603 S.W.2d 186, 191 (Tex.1980). The evidence and inferences that support the jury findings and the verdict are as follows:

(1) Appellee received an injury to his right shoulder on January 25, 1978. He reported the injury to his foreman, who told him to take some Bufferin.

(2) On the Monday next following the accident he went to see Dr. Luedemann concerning his right shoulder and was told he had a pulled muscle. Appellee was referred to Leudemann by appellant. The doctor advised him to return to work.

(3) He testified he continued working with pain in his right shoulder.

(4) His usual job was to stand poles, shovel, and dig holes.

(5) He had been working for appellant for twenty-six years.

(6) Dr. Williams performed rotator cuff surgery on appellee's right shoulder and repaired a rotator cuff tear in March 1980.

(7) Dr. Williams testified that the incapacity to appellee's right shoulder was permanent and that future surgery was indicated.

(8) Appellee continued working after the date of the injury because he was getting $46.51 a day.

(9) Appellee was forty-eight years of age and possessed a fourth grade education.

(10) Mr. Neumann, appellant's superintendent, after considering appellee's work history and Dr. Williams' report on the incapacity of the worker's right shoulder, discharged him from employment. A letter from Neumann to appellee, which was admitted in evidence, stated that appellee was being released from employment because he could not perform his usual job with his

disability and did not qualify for any other jobs within the division.

As a general rule, a fact finder has implied findings power and can make a reasonable inference from direct or circumstantial probative evidence. In *Harrison v. Harrison*, 597 S.W.2d 477, 485 (Tex.Civ. App.—Tyler 1980, writ ref'd n.r.e.), the court stated, "The jury is not only the judge of the facts and circumstances proven, but may also draw reasonable inferences and deductions from the evidence presented to it."

▪ A claimant need not show economical loss because of the injury; the fact that he continues to work and earn money is but one factor to be considered. *American General Insurance Co. v. Bailey*, 287 S.W.2d 290, 292 (Tex.Civ.App.—Galveston 1956, writ ref'd n.r.e.). Total incapacity occurs when a workman is disabled by injury to such an extent that he cannot perform the usual tasks of a workman; the term does not imply absolute physical inability to perform any kind of labor. *Texas Employers' Insurance Association v. Mallard*, 143 Tex. 77, 182 S.W.2d 1000, 1002 (1944); *Texas General Indemnity Co. v. Cox*, 544 S.W.2d 766, 768 (Tex.Civ.App.— Dallas 1976, no writ); *Travelers Insurance Co. v. Smith*, 435 S.W.2d 248, 249 (Tex.Civ. App.—Texarkana 1968, writ dism'd). The definition of total incapacity does not require that an injured person be reduced to a condition of complete and abject helplessness causing an absolute disability to perform any kind of labor. *Texas General Indemnity Co. v. Cox*, 544 S.W.2d at 769. Accordingly, we find legally sufficient evidence to support the challenged jury findings and verdict.

▪ The question on the factual sufficiency of the evidence mandates that we consider and weigh all the evidence in the case and set aside the verdict and remand for a new trial if we conclude that the verdict or finding is so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951); *see also* Calvert, *"No Evi-*dence" and "Insufficient Evidence" Points of Error, 38 TEX.L.REV. 361 (1960). The significant evidence to the contrary was Dr. Williams' testimony that the worker's right upper extremity was only disabled by twenty percent (20%); however, appellant concedes that Mr. Neumann considered the twenty-percent (20%) disability report as one of the factors for discharging appellee. The discharge clearly shows that appellee was no longer able to stand poles, shovel, and dig holes. The jury could have been concerned about the sudden interest in appellee's work history after twenty-six years of service. Having reviewed the entire record, we find that the jury findings and verdict are not so against the great weight and preponderance of the evidence as to be clearly wrong and unjust.

▪ In Texas, the rule by which a party's recovery in a lawsuit is barred by his own testimonial declarations is one of public policy; it would be as absurd as it manifestly would be unjust to allow a party to recover after he has clearly and unequivocally sworn himself out of court. *United States Fidelity & Guaranty Co. v. Carr*, 242 S.W.2d 224, 229 (Tex.Civ.App.—San Antonio 1951, writ ref'd). The five rules set forth by then Associate Justice Norvell in the *Carr* case must apply before a party's testimony is conclusive against him. It is incumbent upon appellant to satisfy these five requirements:

(1) That the declaration relied upon was made during the course of a judicial proceeding;

(2) That the statement is contrary to an essential fact embraced in the theory of recovery or defense asserted by the person giving this testimony;

(3) That the statement is deliberate, clear and unequivocal. The hypothesis of mere mistake or slip of the tongue must be eliminated. If the statement merely contradicts some other portion of the party's testimony, conclusive effect cannot be given thereto, but a fact issue is presented for the determination of the jury;

(4) That the giving of the conclusive effect to the declaration will be consistent with the public policy upon which the rule is based; and

(5) That the statement is not also destructive of the opposing party's theory of recovery. In other words, the declaration must be one relating to a fact upon which a judgment in favor of the opposing party may be based.

Appellee made the declarations during the course of the proceedings in the instant case, satisfying the first requirement. His statements, however, were not deliberate, clear and unequivocal. First, the statements were of a matter held as an opinion or belief; second, such belief was mistaken; and finally, the statements were contradicted by other testimony which established fact questions concerning appellee's work restrictions. To give conclusive effect to these statements would be inconsistent with public policy because appellee was not unequivocally swearing himself out of court. Additionally, although the declaration relates to a fact upon which a judgment in favor of appellant may be based, it does not establish the admitted element as a matter of law. Testimony of parties to a suit must be regarded as evidence, not as facts admitted. *Carr*, 242 S.W.2d at 228. In the instant case, the weight to be given appellee's statements was resolved by the jury in favor of appellee. Points of error one through five are overruled.

Under points of error six through eleven, appellant contends that the judgment was erroneously based on the jury answers to special issues nine, ten, and eleven, which concern the question of good cause for late filing of the claim for worker's compensation benefits. Appellant specifically complains that there is no evidence or insufficient evidence to support the jury findings on the challenged issues:

### Special Issue No. 9

Do you find from a preponderance of the evidence that within six months from the date of such injury Plaintiff had a bona fide belief that his injury was trivial?

Answer "Yes" or "No."

Answer: Yes

### Special Issue No. 10

Do you find from a preponderance of the evidence that such belief caused plaintiff to delay in filing a claim for compensation with the Industrial Accident Board until such claim was filed on June 1, 1979?

Answer "Yes" or "No."

Answer: Yes

### Special Issue No. 11

Do you find from a preponderance of the evidence that such belief was good cause for his delay in filing the claim for such period of time?

A person has "good cause" for delay in filing a claim when he has prosecuted his claim with such diligence as an ordinarily prudent person would have used under the same or similar circumstances.

Answer "Yes" or "No."

Answer: Yes

Appellee filed his complaint for worker's benefits with the Industrial Accident Board on June 1, 1979, which was sixteen months after the date of the injury. The version of TEX.REV.CIV.STAT.ANN. art. 8307, § 4a in effect at the time of trial required that a claim for compensation be filed with the Industrial Accident Board within six months after the occurrence of the injury.[1] For good cause, however, the Board may in meritorious cases waive strict compliance with the limitations for notice and filing.

■■■ "Good cause" for not filing a claim for compensation is determined on the basis of whether the claimant prosecuted his claim with that degree of diligence that an ordinarily prudent person would have exercised under the same or

---

1. This section was amended in 1983 to expand the time for filing to one year. Act of April 19, 1947, ch. 113, § 10, 1947 Tex.Gen. & Spec.Laws 176, 180, *amended by* Act of June 19, 1983, ch. 498, § 1, 1983 Tex.Sess.Laws Serv. 2921 (Vernon).

similar circumstances. *Hawkins v. Safety Casualty Co.*, 146 Tex. 381, 207 S.W.2d 370, 372 (1948). The question of whether the claimant has exercised that degree of diligence required under the ordinarily prudent person test is usually a question of fact to be determined by the jury or trier of fact. It may be determined against the claimant as a matter of law only when the evidence construed most favorably for the claimant admits no other reasonable conclusion. *Lee v. Houston Fire & Casualty Insurance Co.*, 530 S.W.2d 294, 296 (Tex. 1975). Generally, a worker can establish good cause for failure to timely file his claim for worker's compensation if he was acting under the belief that his injuries were trivial, provided that he had no affirmative medical opinion to the contrary. *Liberty Mutual Insurance Co. v. Stanley*, 534 S.W.2d 191, 193 (Tex.Civ.App.—Texarkana 1976, writ ref'd n.r.e.). Texas courts have found good cause to exist in those cases where a physician advises the worker that his injuries are not serious, provided that the worker in the exercise of ordinary care believes and relies upon that advice. *Travelers Insurance Co. v. Rowan*, 499 S.W.2d 338, 341 (Tex.Civ.App.—Tyler 1973, writ ref'd n.r.e.), *citing Harkey v. Texas Employers' Insurance Association*, 146 Tex. 504, 208 S.W.2d 919 (1948).

It is in this context that we address appellant's assertion of no evidence to support the jury's findings related to a showing of good cause. The record evidence most favorable to the verdict is as follows:

(1) Appellee sustained an injury in the course and scope of his employment on January 25, 1978. He was operating a jack hammer when the stem broke, causing appellee to fall and strike his right shoulder against the hammer's handle. He was given two Bufferins and returned to his laborer's duties, without being taken to a hospital or to see a medical doctor.

(2) On the Monday following the date of the accident, appellee saw Dr. Luedemann, a physician to whom he was referred by appellant; Luedemann diagnosed his condition as a pulled muscle and advised him to return to work. This diagnosis was related to the injury and the pain appellee was complaining of.

(3) Appellee testified that he continued to work, but had pain in his right shoulder while working, lost sleep, and sometimes could not get out of bed because of the pain in his shoulder.

(4) In December 1978, appellee, still complaining of pain in his right shoulder, went to see Dr. Mimari, who instead of treating the shoulder, performed gall bladder surgery, and later, hernia surgery on appellee. This doctor also advised appellee to return to work.

(5) In March 1980, Dr. Williams performed surgery on appellee's right shoulder, repairing a tear in the rotator cuff.

■ Appellant argues that there was no evidence or insufficient evidence to show that appellee had a bona fide belief that his injury was trivial and required direct evidence in this regard. The jury, as the fact finder, has implied findings power and can make a reasonable inference from the direct or circumstantial evidence. *Harrison v. Harrison*, 597 S.W.2d at 485; *Lynch v. Ricketts*, 158 Tex. 487, 314 S.W.2d 273, 276 (1958). This general injury case presented to the jury a worker with a fourth grade education, who, after twenty-six years of service for the same employer, was still working as a heavy duty laborer on the date of the accident. Obviously, appellee relied on Dr. Luedemann's diagnosis that the trouble with his right shoulder was a pulled muscle. Thus, he did not believe his injury to be serious. He again relied on the treatment and surgery by Dr. Mimari for a condition not related to the injury, and was told to return to work. Lastly, his complaint that he suffered pain and worked with pain since the date of the accident was confirmed by Dr. Williams, who found the disabling injury and performed the surgery on the worker's right shoulder. Therefore, we find that the record reflects some evidence of probative force to support the jury's finding and verdict.

In considering the factual sufficiency of the evidence questions on these special issues, we have again, as required, reviewed the whole record. The only significant evidence to the contrary is appellee's work history after the injury with continuous pain. Appellant argues that failure to timely file the claim for compensation was due to appellee's lack of diligence since he continued to experience pain to his right shoulder after the gall bladder surgery. It is undisputed that appellee was told by Dr. Leudemann, several days after the accident, that his injury was a pulled muscle and that he should return to work. This gave the worker reason to believe his injury was not serious. Approximately seven months later, appellee consulted Dr. Mimari about the pain in his right shoulder but was side-tracked with gall bladder and hernia surgery; in July 1979, Dr. Mimari released him to return to his regular work. There is sufficient evidence in this record from which the jury could have impliedly found that appellee relied on the advice of his doctors and had a bona fide belief that his injury was not serious. Thus, having reviewed the entire record, we do not find that the evidence is so against the great weight and preponderance as to be clearly wrong and unjust. Points of error six through eleven are overruled.

The judgment of the trial court is affirmed.