**FARMLAND MUTUAL INSURANCE COMPANY, Appellant,**

v.

**Pedro ALVAREZ, Appellee.**

**No. 13–89–270–CV.**

Court of Appeals of Texas,
Corpus Christi.

Jan. 31, 1991.

Rehearing Overruled Feb. 28, 1991.

Roger W. Hughes and Craig H. Vittitoe, Adams & Graham, Harlingen, for appellant.

Randall P. Crane, San Benito, for appellee.

Before NYE, C.J., and SEERDEN and KENNEDY, JJ.

## OPINION

SEERDEN, Justice.

This is a workers' compensation case. Pursuant to a jury verdict, the trial court entered judgment against Farmland Mutual Insurance Company (Farmland) for compensation based upon the total and permanent incapacity of the appellee, Pedro Alvarez. By seven points of error, appellant complains of the legal and factual insufficiency of the evidence to justify the filing of the claim for compensation more than eighteen months after Alvarez' injury, the beginning date of total disability, the wage rate, a conflict in answers to some of the special issues, and the admission of certain evidence. Because we find no reversible error, we affirm the trial court's judgment.

By its first three points of error, appellant complains that there was no evidence or insufficient evidence to support the jury findings that Alvarez believed his injury was trivial or that his employer had prosecuted his claim and that such belief constituted good cause for Alvarez' twelve month delay in filing his claim.

In considering a "no evidence," "insufficient evidence" or "against the great weight and preponderance of the evidence" point of error, we will follow the well-established test set forth in *Pool v. Ford Motor Co.*, 715 S.W.2d 629 (Tex.1986); *Dyson v. Olin Corp.*, 692 S.W.2d 456 (Tex.1985); *Glover v. Texas Gen. Indem. Co.*, 619 S.W.2d 400 (Tex.1981); *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965); *Allied Fin. Co. v. Garza*, 626 S.W.2d 120 (Tex.App.—Corpus Christi 1981, writ ref'd n.r.e.); and Calvert, *No Evidence and Insufficient Evidence Points of Error*, 38 Texas L.Rev. 361 (1960).

■ The workers' compensation statute requires a claimant to notify the employer or carrier of the injury within thirty days from the date of the injury and file a claim with the Industrial Accident Board within six months after the injury occurred. *See* Tex.Rev.Civ.Stat.Ann. art. 8307, § 4a (Vernon Supp. 1990) (repealed). When a claim has not been properly presented within the six-month period, good cause must continue to the date when the claim is actually filed. *Lee v. Houston Fire & Casualty Ins. Co.*, 530 S.W.2d 294, 296 (Tex.1975); *Texas Casualty Ins. Co. v. Beasley*, 391 S.W.2d 33, 35 (Tex.1965). "Good cause" is that legal excuse preventing a reasonably prudent person from complying with the notice and filing requirements up to the date of the filing of the claim. *Hawkins v. Safety Casualty Co.*, 207 S.W.2d 370, 372 (Tex. 1948); *Employers' Ins. v. Schaefer*, 662 S.W.2d 414, 416–17 (Tex.App.—Corpus Christi 1983, no writ); *Texas Employers' Ins. Ass'n v. Herron*, 569 S.W.2d 549, 551–52 (Tex.Civ.App.—Corpus Christi 1978, no writ).

■ Whether the claimant has exercised that degree of diligence required under the ordinarily prudent person test is usually a question of fact to be determined by the jury or trier of fact. *Memorial Hosp. v. Gillis*, 731 S.W.2d 692, 696 (Tex.App.— Houston [1st Dist.] 1987), *rev'd on other grounds*, 741 S.W.2d 364 (Tex.1987); *City of San Antonio v. Miranda*, 683 S.W.2d 517, 522 (Tex.App.—San Antonio 1984, no writ). Thus, Alvarez' conduct must be examined in its totality to determine whether he met the ordinary prudence test. *Lee*, 530 S.W.2d at 297; *Moronko v. Consolidated Mut. Ins. Co.*, 435 S.W.2d 846, 848 (Tex.1968); *Schaefer*, 662 S.W.2d at 417.

■ The claimant can usually establish good cause for failure to file timely a claim by showing that the failure to file was based on the belief that the injuries were trivial and that the claimant had no affirmative medical opinion to the contrary. *Gillis*, 731 S.W.2d at 696; *Miranda*, 683 S.W.2d at 522. Generally, the claimant's reason for delaying the filing of his claim is found in his own testimony. *Beasley*, 391

S.W.2d at 35; *Schaefer*, 662 S.W.2d at 417. The jury determines the credibility of the witnesses and weighs the evidence of good cause. *Leyva v. Pacheco*, 358 S.W.2d 547, 549 (Tex.1962); *Tenngasco Gas Gathering Co. v. Fischer*, 624 S.W.2d 301, 305 (Tex. App.—Corpus Christi 1981, writ ref'd n.r. e.).

█ The record indicates that on December 26, 1984, Alvarez slipped and sprained his ankle while working as a yardman for New Home Gin Cooperative. As the ankle twisted, Alvarez felt severe pain in his ankle. The pain radiated up the leg and into the lower back and waist area. He continued to work for three hours after the accident, at which time the pain was so great that he requested medical care. The gin supervisor took Alvarez to Dr. Wright, who diagnosed a sprained ankle. Dr. Wright's records do not reflect any complaints about leg or lower back pain.

Alvarez returned to work the next day. He did not take any sick leave although he twice sought Dr. Wright's care for his ankle. The ginning season ended in the latter part of January, 1985. He last saw Dr. Wright on January 22, 1985, for another examination of the still-swollen ankle.

Alvarez subsequently held five other seasonal agricultural labor positions in Texas and Louisiana during 1985. He did not seek medical attention for his ankle, leg or back. In November, 1985, Alvarez returned to his yardman's position at New Home Gin, working through January, 1986, to the end of the ginning season. When the season ended, Alvarez did not seek further employment.

At the end of January, 1986, Alvarez sought medical attention for his back pain at the Su Clinica Familia. The attending physician prescribed bed rest and muscle relaxants. The Clinica referred Alvarez to Dr. Fraim, a neurologist, who determined that his complaint was not serious and referred him back to the Clinica. Alvarez' condition did not improve with the care prescribed by the Clinica.

In March, 1986, Alvarez sought chiropractic care with Dr. Beller. Beller diagnosed that the pain resulted from continued limping and stress upon the lower back causing a lower back sprain with left sciatic nerve involvement. He prescribed chiropractic therapy to alleviate the pain.

In June, 1986, following a series of chiropractic treatments to which Alvarez did not respond, Beller referred him to Dr. Bassett, an orthopedic surgeon. On June 18, 1986, Bassett examined Alvarez and prescribed a physical therapy regimen to last for several weeks. Alvarez submitted to the therapy, but his condition did not improve. He filed his workers' compensation claim on July 8, 1986. During the examination, Alvarez informed Bassett that while working during 1985, he had seen some unidentified health care providers in the Houston area who diagnosed a pinched nerve.

On July 15, 1986, Bassett referred Alvarez to Dr. Bragg, a neurosurgeon, as Bassett now suspected a herniated lumbar disc due to the patient's failure to respond to physical therapy. After performing a myelogram on October 20, 1986, Dr. Bragg determined that Alvarez's back pain was caused either by a ruptured lumbar disc or a bifid nerve root.

Alvarez testified that in the months following the ankle sprain, he experienced a gradually increasing back pain with numbness in his left leg. Dr. Wright, the gin's physician, did not prescribe crutches or a cane and did not prescribe any physical therapy for the ankle. The absence of therapeutic treatment would indicate Wright did not believe the ankle injury was serious.

Following his injury, Alvarez compensated for the sprain by walking with a limp. He often complained to his family and friends that his left leg and back pained him. He testified that the pain radiated from his lower back, down his left buttock and into his left leg but that he did not believe that the pain was caused by a serious ailment.

Mrs. Alvarez and other witnesses testified that Alvarez was an industrious and capable laborer and that, at home, he busied himself repairing items such as the

family car and household appliances. These witnesses also stated that his work activities gradually decreased as the sharp pains in his lower back increased. Mrs. Alvarez stated that she repeatedly urged her husband to seek medical attention for this problem, but he persisted in his belief that the pain would eventually subside.

Mrs. Alvarez also testified that, sometime before or during her husband's medical treatments in early 1986, she received a phone call from a woman identifying herself as a Farmland representative. Mrs. Alvarez stated that this woman, whose name she could not recall, assured her that Alvarez' medical bills would be paid. The record reveals that Farmland initially did pay for some of the medical treatments Alvarez received but that it subsequently refused to pay for his continuing consultations and treatments.

Doctors Beller, Bassett and Bragg testified regarding their individual professional impressions regarding Alvarez' condition. Dr. Beller stated that Alvarez had a fifty percent chance of improving his physical condition through an operation to remove the herniated disc. Beller stated that the initial sprain related to the present condition in the leg and back because the sprain caused limping which ultimately aggravated the leg and back. Dr. Bassett indicated that it was possible that the limping aggravated the nerves in Alvarez' leg and lower back. Dr. Bragg stated that Alvarez' abnormal gait was a factor in causing a ruptured disc. Bragg stated that at the time Alvarez twisted his ankle, he also may have developed a cracked disc which eventually herniated due to the constant strain which limping placed upon the spine.

Farmland asserts that appellant lacked good cause because a claimant with a manifest and disabling condition cannot reasonably believe his injury was trivial and may not rely upon claims that he will probably improve. *Texas Employers' Ins. Ass'n v. Portley,* 263 S.W.2d 247, 250 (Tex.1954). Farmland also asserts that when a claimant is aware that he has sustained a serious and disabling injury on the job, his belief that his injury is minor and that he will improve cannot, as a matter of law, be reasonable. *See Bounds v. Pacific Employers' Ins. Co.,* 535 S.W.2d 782 (Tex.Civ. App.—Beaumont 1976, no writ); *Texas Employers' Ins. Ass'n v. Allen,* 519 S.W.2d 194 (Tex.Civ.App.—Corpus Christi 1975, writ ref'd n.r.e.).

In *Portley,* the plaintiff cut his heel by stepping into an open drain at his work place. He waited three days before seeking medical attention. Dr. Watts, the attending physician, required the plaintiff to remain in bed for two weeks and treated the infected wound with penicillin. The wound began to heal with the treatments; however, against Dr. Watts' advice, the plaintiff returned to work. After a week on the job, the injury steadily worsened. The plaintiff continued to seek ultimately unsuccessful medical treatment but remained at work despite an increasingly painful and infectious disfigurement. Almost a year after the injury, the leg was amputated due to an injury-related cancerous condition.

The *Portley* court found that from a week after the plaintiff returned to work until he ceased work almost one year later, the plaintiff had a "manifestly serious and disabling condition of which he was fully aware." The court examined the plaintiff's testimony that he believed that his foot "was going to get all right" after the two week treatment against his wife's testimony that the foot would "look like it was healing up, and again it wouldn't," and the testimonies of Dr. Watts and Dr. Combs. Dr. Watts testified that he warned the plaintiff prior to his return to work that his condition was serious, that it "might have far-reaching effects upon him," and that he should not return to work. Dr. Combs testified that he initially examined the plaintiff six months after his injury and found the leg "rotten and had swelled and had proud flesh, and was an awful looking mess." The court found that these facts established that the plaintiff's condition was anything but trivial and that a reasonably prudent person would not have persisted in his belief that the injury would improve and would have filed a claim to protect his rights.

In *Bounds*, the plaintiff's back was injured when an eighty pound overhead crane fell on him. The injury necessitated a two-day stay in the hospital. Although the plaintiff obtained permission from the company doctor to return to work, he experienced constant and sharp pain in his back which gave way to a constant, dull throbbing. The court examined the evidence and found that the plaintiff knew from the moment he was injured that his pain, suffering and disability were caused by the accident in question. Furthermore, the plaintiff knew that his injury was severe, that his back problems continued to get worse, and no one ever told him that his pain did not stem from the injury. Lastly, he failed to present evidence regarding the approximate time when he decided that his injury was not trivial and that he would not get better. The court held that the plaintiff did not affirmatively establish that he had good cause up to the filing of his claim fifteen months after his injury.

In *Allen*, the plaintiff experienced sharp pains in his chest and in his left arm during and after trying to free a heavy piece of equipment. The plaintiff's physician diagnosed a heart attack. The court held that the evidence conclusively established that the plaintiff knew that he suffered a disabling injury on the day he moved the equipment, that it was serious, and that he sustained the injury while working for his employer. Thus, the only reasonable conclusion that the plaintiff could have drawn from the facts and circumstances presented by the record was that the heart attack was directly related to the exertion he expended in trying to free the piece of equipment. Furthermore, the plaintiff's only excuses for the late filing were that he expected to go back to work, and that the doctor never did tell him that his heart attack was job related. Hence, the court held that a reasonable and prudent person would not have delayed filing his claim for more than two years after his accident occurred.

The present case can be distinguished from *Portley*, *Allen* and *Bounds* because Alvarez' injury was initially diagnosed as a sprained ankle—an injury which, at least initially, does not impress one as being as manifestly serious and disabling as a deeply cut and severely infected leg, an instantly disabling blow to the back, or a heart attack. Prior to filing his claim, Alvarez was not warned by any of the health care professionals treating him that his condition was serious or severe. In fact, all the doctors but Dr. Bragg, the neurosurgeon, prescribed either a conservative treatment regimen or no regimen at all.

A claimant's belief that his injury is trivial in nature or that his disability is trivial may constitute good cause. *Hawkins*, 207 S.W.2d at 372. In *Hawkins*, the court held that the claimant's reliance upon medical advice that his injury was not critical constituted good cause particularly when the injury was not open or visible and its severity could only be revealed through examinations by medical experts.

In the present case, despite the gradual increase in pain Alvarez continued performing agricultural labor. He sought treatment when he realized no improvement in his condition over a period of time. Similarly to *Hawkins*, by seeking to alleviate his pain, Alvarez received several incorrect diagnoses and unsuccessful therapies prescribed by a general practitioner, a chiropractor and an orthopedist. Following these treatments, he filed his claim. Several months later, Dr. Bragg diagnosed the cause of his pain and emphasized that his condition rendered him totally and permanently disabled.

The evidence supports the jury finding that Alvarez delayed filing his claim because he had good cause to do so after a variety of differing diagnoses and therapies by a succession of health care professionals proved unsuccessful in alleviating his health problems. Points one, two and three are overruled.

Farmland asserts by its fifth point of error that the trial court erred by admitting Victoria Alvarez' testimony that an unknown Farmland representative contacted her on an unknown date and offered to pay her husband's medical bills. Farmland failed to preserve error on this point be-

cause its attorney first objected to the testimony only after Mrs. Alvarez had fully testified regarding the incident. Tex.R. App.P. 52(a). Point five is overruled.

Farmland asserts by its sixth point of error that the trial court erred by granting judgment for Alvarez because there was no evidence or factually insufficient evidence to support the jury finding for Special Issue number three that any total incapacitation Alvarez suffered began from the day he sprained his ankle.

There is no fixed rule of evidence by which to prove permanent disability. A jury must determine the extent and duration of a disability based on all the pertinent facts. *Navarette v. Temple Indep. School Dist.*, 706 S.W.2d 308, 310 (Tex. 1986); *Texas Employers' Ins. Ass'n v. Ramirez*, 770 S.W.2d 896, 901 (Tex.App.—Corpus Christi 1989, writ denied). A return to work is evidence which the jury may consider when making a disability determination; however, this evidence is not conclusive. *Navarette*, 706 S.W.2d at 310; *Gonzalez v. Texas Employers' Ins. Ass'n*, 772 S.W.2d 145, 147 (Tex.App.—Corpus Christi 1989, writ denied); *Ramirez*, 770 S.W.2d at 901. "Total incapacity" does not mean absolute inability to perform any kind of labor; rather, it means that a person is disabled from performing the usual tasks of a workman, not merely the usual tasks of any particular trade, to such an extent that he cannot get and keep employment. *Texas Employers' Ins. Ass'n v. Hawkins*, 369 S.W.2d 305, 306–07 (Tex.1963); *Gonzalez*, 772 S.W.2d at 147; *Ramirez*, 770 S.W.2d at 901.

Alvarez testified that he felt pain from his ankle to his lower back on the day he sprained his ankle. His wife, daughter and friends testified that although Alvarez continued to work for a year after his injury, his ability to perform the usual agricultural labor decreased as his complaints about the pains in his leg and back increased. Alvarez testified that he could no longer work due to the intense pain in his back and left leg. He stated that he had to alternate between short periods of sitting, standing and lying down to alleviate the pain he suffered.

Doctor Beller testified that Alvarez' ruptured disc caused severe pain and that he would not be able to resume performing the general bending and lifting requirements of a laborer, even though he had spinal surgery to correct the problem. He indicated that Alvarez would always endure some type of back pain but that the surgery would prevent any further nerve damage. Doctor Bragg indicated that the prognosis for total recovery was minimal. This evidence is sufficient to sustain the jury's finding of total, permanent incapacity so that he could not get and keep work. Appellant's sixth point of error is overruled.

Farmland complains by its fourth point of error that the trial court erred by granting judgment in favor of Alvarez and denying the motion for new trial because the jury's finding of total and permanent incapacity at the time of the injury conflicts with the jury's findings that Alvarez believed his injury was trivial and that such belief was good cause for his failure to file for the entire nineteen month period.

When reviewing jury findings for conflict, the threshold question is whether the findings inquire about the same material fact. *Bender v. Southern Pac. Transp. Co.*, 600 S.W.2d 257, 260 (Tex.1980); *Garcia v. Dependable Shell Core Mach., Inc.*, 783 S.W.2d 246, 249 (Tex. App.—Corpus Christi 1989, no writ); *Mancillas v. Texas Employers' Ins. Ass'n*, 543 S.W.2d 751, 755 (Tex.Civ.App.—Corpus Christi 1976, writ ref'd n.r.e.). The test for determining whether an irreconcilable conflict between issues exists is whether, taking into consideration the rest of the verdict supported by the evidence, one finding alone requires judgment in the plaintiff's favor and the other finding taken alone requires judgment in the defendant's favor. *Bender*, 600 S.W.2d at 260; *Signal Oil & Gas Co. v. Universal Oil Prods.*, 572 S.W.2d 320, 326 (Tex.1978); *Garcia*, 783 S.W.2d at 249; *Equitable Trust Co. v. Roland*, 721 S.W.2d 530, 533 (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e.). An

appellate court may not strike down conflicting jury answers if there is any reasonable basis upon which they may be reconciled. *Bender*, 600 S.W.2d at 260. When reviewing a jury's answers, the court is not to determine whether the findings may be viewed as conflicting, but rather, if there is any reasonable basis upon which they can be reconciled. *Garcia*, 783 S.W.2d at 249; *Remenchik v. Whittington*, 757 S.W.2d 836, 838 (Tex.App.—Houston [14th Dist.] 1988, no writ).

Special Issue number three relates to the issue of the severity of Alvarez' injury. In this case, the jury found that he was totally incapacitated on December 26, 1984, the date he sprained his ankle. Special Issue numbers 25, 26, and 27 relate to the good cause excuse for not filing a claim within the statutory period. In this case, the jury found that until Alvarez filed his claim, he believed that his injury was trivial or that his employer or its agents had prosecuted his claim and also found that such a belief was good cause for his delay in filing that claim.

■ It is well established that a worker may be totally and permanently disabled under the workers' compensation act although he still earns money. *Transamerica Ins. Co. v. Hernandez*, 769 S.W.2d 608, 613 (Tex.App.—Corpus Christi 1989, writ denied); *City of McAllen v. Alvarado*, 718 S.W.2d 903, 906 (Tex.App.—Corpus Christi 1986, no writ). A finding of total disability is not precluded merely because an injured employee is forced to resume work because of economic necessity. *Hernandez*, 769 S.W.2d at 613.

Hence, no conflict exists because the finding in Special Issue number 3 relates to a different issue than the issues in Special Issue numbers 25 through 27. Point of error number four is overruled.

■ Farmland complains by its seventh point of error that there is no evidence or insufficient evidence to support the jury's finding regarding wage rate. In response to Special Issue number 23, the jury found that $306.60 was the wage rate that would be fair to both Alvarez and Farmland. It argues that the jury, when deliberating the wage amount, did not consider that Alvarez was only intermittently employed as a seasonal worker. Thus, it argues that a "just and fair" wage determination would take into account the fact that a yardman's intermittent employment period's would lower Alvarez' average wages.

A "just and fair" wage is not a matter of mathematical calculation but must be fixed by the jury with due consideration of all the facts and circumstances present in the case that may establish the earning capacity of the claimant. *Barrientos v. Texas Employers' Ins. Ass'n*, 507 S.W.2d 900, 904 (Tex.Civ.App.—Amarillo 1974, writ ref'd n.r.e.).

Alvarez testified that a yardman earned between $3.50 and $3.75 an hour at the time of his injury. Testimony and the work records from New Home Gin and Producer's Gin of Belen, Mississippi indicate that a yardman works twelve hours a day, seven days a week during the ginning season. After reviewing all of the evidence, we hold that there is sufficient evidence to justify the jury's answer of $306.60 as a just and fair wage rate. Appellant's seventh point of error is overruled.

The trial court's judgment is AFFIRMED.