NUMBER 13-99-538-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI

__________________________________________________________________


CITY OF EDINBURG, Appellant,


v.


RODOLFO ACUÑA, Appellee.

__________________________________________________________________


On appeal from the 206th District Court of Hidalgo County, Texas.

__________________________________________________________________


O P I N I O N

Before Justices Hinojosa, Yañez, and Chavez (1)

Opinion by Justice Yañez


This is a workers' compensation case. (2) A jury awarded judgment in favor of appellee, Rodolfo Acuña, against appellant,
the City of Edinburg ("the City"), for total and permanent incapacity. In two issues, the City complains of the legal and
factual sufficiency of the evidence supporting the jury's findings that Acuña: (1) was totally and permanently incapacitated
as a result of a work-related injury; and (2) was entitled to receive $83,560.50 for medical expenses. We affirm, in part,
and reverse, in part. 

Background 


In 1975, Acuña began working for the City in the garage department washing and greasing cars. He later worked as a
mechanic, and eventually became superintendent of the department, in charge of approximately twelve employees. Acuña
testified that he had a third-grade education and was unable to read and write in English or Spanish. As superintendent, he
continued to perform mechanic work, but not on a regular basis. His job duties included bookkeeping and inventory for the
department; his secretary completed the required paperwork and Acuña signed such paperwork as required. 

Acuña allegedly suffered a work-related injury to his back on April 18, 1985, while lifting an automobile transmission onto
a city truck. On May 3, 1985, Acuña began seeing Dr. Carlson, a local chiropractor, for treatment. On May 31, 1985,
Acuña also saw Dr. Keillor, an orthopedic surgeon. Dr. Keillor performed an examination, took X-rays, and recommended
whirlpool treatment, muscle relaxants, and wearing a corset for back support. Keillor released him for work on May 31st.
Acuña again saw Keillor for a follow-up visit on June 14th and a final time on July 24th. Keillor testified by deposition
that by the second visit, Acuña's condition had improved, and on the final visit, Acuña reported he was "all well." Acuña
continued to work throughout the period following the injury.

On June 30, 1986, Acuña and several other City employees were laid off due to the closing of the garage department. Two
days later, on July 2, 1986, Acuña saw Dr. Krishnan, another orthopedic surgeon. Krishnan testified by deposition that he
took X-rays, prescribed medication, and recommended a continuation of exercise. Acuña saw Krishnan for a follow-up
visit in August and again in September. Acuña did not return to see Krishnan until four years later, in January 1990, at
which time Krishnan recommended an MRI. An MRI of Acuña's spine was taken in February 1990. Krishnan testified that
the February 2, 1990 MRI report reflects that Acuña had a "disc problem," which had caused some nerve root compression. 

On May 9, 1990, Acuña saw Dr. Tijerina, who prescribed diagnostic tests and physical therapy. Tijerina's records reflect
Acuña returned three years later, on April 1, 1993. The records further reflect that the tests earlier recommended by
Tijerina apparently were not done and that Acuña had not been seen by any doctor during the intervening three years.
Tijerina recommended that Acuña have another MRI taken, which was done in January of 1994. Krishnan testified that the
1994 MRI showed that the disc herniation reflected in the 1990 MRI had become more prominent and that some additional
bulging had occurred. 

On May 11, 1990, the Worker's Compensation Commission found that Acuña had sustained only four weeks of temporary
disability with a compensation rate of $203 per week. The Industrial Accident Board made its final ruling on Acuña's claim
on March 29, 1990. Acuña filed suit on June 15, 1990. Following a jury trial, the trial court entered judgment in Acuña's
favor. The judgment held Acuña was totally and permanently incapacitated (3) and awarded him $83,560.50 in medical
expenses.

Standard of Review 


A "no evidence" standard of review is applied when the party without the burden of proof challenges a finding of fact by
arguing that the evidence is legally insufficient to support the finding. Hickey v. Couchman, 797 S.W.2d 103, 109 (Tex.
App.-Corpus Christi 1990, writ denied) (citing Croucher v. Croucher, 660 S.W.2d 55, 58 (Tex. 1983)). When we review a
legal sufficiency of the evidence point of error, we must consider all the evidence in a light favorable to the party in whose
favor the verdict was rendered, and every reasonable inference raised by the evidence is to be indulged in that party's favor.
Formosa Plastics Corp. USA v. Presidio Eng'rs and Contractors, Inc., 960 S.W.2d 41, 48 (Tex. 1998); Hines v. Comm'n
for Lawyer Discipline, 28 S.W.3d 697, 701 (Tex. App.-Corpus Christi 2000, no pet.). A legal sufficiency point may only
be sustained when the record discloses: (1) a complete absence of evidence of a vital fact; (2) the court is barred by rules of
law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a
vital fact is no more than a mere scintilla; and (4) the evidence established conclusively the opposite of the vital fact.
Juliette Fowler Homes, Inc. v. Welch Assoc., 793 S.W.2d 660, 666 n. 9 (Tex. 1990). If there is more than a scintilla of
evidence to support the finding, the legal sufficiency challenge fails. Formosa, 960 S.W.2d at 48; Stafford v. Stafford, 726
S.W.2d 14, 16 (Tex. 1987). When the evidence offered to prove a vital fact is so weak as to do no more than create a mere
surmise or suspicion of its existence, the evidence is not more than a scintilla and, in legal effect, is no evidence. Kindred
v. Con/Chem, Inc., 650 S.W.2d 61, 63 (Tex. 1983). The test for the application of the no evidence rule is: if reasonable
minds cannot differ from the conclusion, then the evidence offered to support the existence of a vital fact lacks probative
force, and it will be held to be the legal equivalent of no evidence. Id.; Hines, 28 S.W.3d at 701. 

When we review the factual sufficiency of the evidence, we consider, weigh and examine all of the evidence which
supports or undermines the finding of the trier of fact. Plas-Tex, Inc. v. United States Steel Corp., 772 S.W.2d 442. 445
(Tex. 1989). We review the evidence, keeping in mind that it is the fact finder's role, not ours, to judge the credibility of
the evidence, to assign the weight to be given to testimony, and to resolve inconsistencies within or conflicts among the
witnesses' testimony. Corpus Christi Teachers' Credit Union v. Hernandez, 814 S.W.2d 195, 197 (Tex. App.-San Antonio
1991, no writ). We then overturn findings only if they are so against the great weight and preponderance of the evidence as
to be clearly wrong and unjust. Ortiz v. Jones, 917 S.W.2d 770, 772 (Tex. 1996). 

Analysis 


By its first issue, the City contends that the evidence was both legally and factually insufficient to support the jury's finding
that Acuña was totally and permanently incapacitated. The City argues that the evidence is insufficient to support the jury's
finding because Acuña was released to return to work by every doctor he saw for five years following the accident. 

There is no fixed rule of evidence by which to prove disability. Farmland Mut. Ins. Co. v. Alvarez, 803 S.W.2d 841, 847
(Tex. App.-Corpus Christi 1991, no writ). The fact finder must determine the extent and duration of a disability based on
all the pertinent facts. See Navarette v. Temple Indep. Sch. Dist., 706 S.W.2d 308, 310 (Tex. 1986); Alvarez, 803 S.W.2d
at 847; Texas Employers' Ins. Ass'n v. Ramirez, 770 S.W.2d 896, 901 (Tex. App.- Corpus Christi 1989, writ denied). A
return to work is some evidence that the factfinder may consider when making a disability determination; however, this
evidence is not conclusive. Navarette, 706 S.W.2d at 310; Alvarez, 803 S.W.2d at 847; Ramirez, 770 S.W.2d 896, 901.
The mere fact that a claimant has returned to work after his injury does not, in and of itself, preclude a finding of total and
permanent incapacity. City of McAllen v. Alvarado, 718 S.W.2d 903, 906 (Tex. App.-Corpus Christi 1986, no
writ);Lumbermen's Mut. Casualty Co. v. Villalpondo, 605 S.W.2d 705, 707 (Tex. App.-Corpus Christi 1980, no writ). 
This principle is particularly true where the claimant returned to work after an injury out of hardship and economic
necessity. Alvarado, 718 S.W.2d at 907. 

"Total incapacity" does not mean absolute inability to perform any kind of labor; rather, it means that a person is disabled
from performing the usual tasks of a workman, not merely the usual tasks of any particular trade, to such an extent that he
cannot get and keep employment. Texas Employers Ins. Ass'n v. Hawkins, 369 S.W.2d 305, 306-07 (Tex. 1963); Alvarez,
803 S.W.2d at 847; Gonzalez v. Texas Employers Ins. Ass'n, 772 S.W.2d 145, 147 (Tex. App.-Corpus Christi 1989, writ
denied).

Here, there is some evidence of probative value that Acuña was totally and permanently incapacitated by the work-related
injury. Acuña testified that as a result of the injury, he has suffered pain in his back and leg, and that the pain has worsened
since the injury. He testified that he has never "gotten well" or recovered to a point that he was free from pain. He denied
that he told Dr. Keillor that he had fully recovered from the injury. He testified that he was unable to perform mechanic
work after the injury. Prior to working for the City, he performed migrant field work, painted houses, and did cement
foundation work. He testified that since the injury, he is unable to do any heavy lifting, and because of the pain, cannot do
any of the jobs he was able to do before the injury. He stated that during the year following the injury, he was able to
continue to work for the City by taking frequent rest breaks and performing stretching exercises to alleviate the pain. He
testified that his wife works and he stays at home and does minor household chores.

Dr. Krishnan testified that Acuña's 1991 MRI shows that he had a disc problem with nerve root compression, and the 1994
MRI shows that the herniation had become more severe. He testified that in all reasonable probability, Acuña's herniated
disc was a result of the 1985 work-related injury. Krishnan testified that because of the injury, Acuña was unable to do any
heavy-duty mechanic work or any other heavy-duty work. He further testified that Acuña is totally incapacitated based on
the definition of "total incapacity" under the workers' compensation statute.

Keillor testified that over the two-month period that he treated Acuña, Acuña got "completely well" and did not suffer any
permanent impairment or disability. He also testified that based on his examination, in all medical probability, Acuña did
not have a herniated disc in 1985. He also stated that Acuña had reported that he was "all well."

We hold that the evidence is legally and factually sufficient to support the jury's finding that Acuña was totally and
permanently incapacitated as a result of his work-related injury. We overrule the City's first issue.

Medical Expenses


By its second issue, the City contends there is no evidence, or factually insufficient evidence, to support the jury's finding
that Acuña was entitled to $83,560.50 in reasonable medical expenses. Acuña concedes that he is only entitled to recover
for medical expenses accrued at the time of trial and not for future medical expenses. He argues that the amount awarded
by the jury is not for future medical expenses, but rather, was awarded by the jury because of the City's failure to "provide
any medical benefits to their injured employee." He argues that the jury awarded more money than was requested to
compensate for the medical treatment that he should have been provided and was wrongfully denied. In his brief, Acuña
asserts that his choice of a medical provider was Dr. Carlson, and that an unpaid balance of $8,335.00 is owed to Carlson
for medical services. In support of his allegation, Acuña offers a handwritten note, (4) purportedly from the City's records,
which includes the notation, "never knew if DAC paid" and "$8,335 bal at DAC." In addition, Manuel Davila, personnel
director for the City, testified as follows concerning the note:

Q [by counsel]: Don't those notes from the City that were provided to us reflect that over eight thousand dollars was owed
to Dr. Carlson?



A: Yeah. These are some notes by Dee Decker. (5)



Except for the handwritten note described above, Acuña offers no evidence in support of his claim for medical expenses
owed to Carlson. He also asserts that additional medical expenses, for the MRIs and the services of Drs. Krishnan and
Tijerina, total $9,056.85; however, Acuña cites no reference to the record in support of this claim and we find no evidence
in the record to support it. During Krishnan's videotaped deposition testimony, Acuña's counsel asks, "[d]octor, do you
have a reference as to the amount of medical charges that he has incurred for treatment with you?" Krishnan responds, "I
can get it for you." However, no affidavit or other supporting documentation appears in the record. The record contains
copies of three invoices from Krishnan's office: 1) an invoice dated March 9, 1990 for $76.35; 2) a second invoice dated
January 23, 1990 for $520.50; and 3) a third dated February 3, 1994 for $125.00. (6) The third invoice for $125.00 is
marked "paid." We find no evidence in the record, and Acuña cites us to none, establishing that the amounts reflected in
the invoices were not paid.

With regard to his medical expenses, Acuña testified as follows:

Q [by counsel]: As far as you know, sir, did the City of Edinburg ever offer to pay any of the medical bills of Dr. Krishnan
after 1986?



A: No.



Q: As far as you know, did they ever offer to pay Dr. Tijerina for any of the visits that you had from the time of the injury
up until 1993?



[Counsel for City]: Excuse me. There is -- I'll object to that line of questioning. There is no evidence regarding Dr. Tijerina.



[Court]: Overruled. Overruled.



[City]: I would also voice the objection that it's a leading question.



[Court]: All right. That's overruled as well.



Q [Acuña's counsel]: As far as you know, did they ever offer?



A: No, sir.



Q: As far as you know, did they ever offer to pay Dr. Carlson the balance that was owed?



A: No, sir.



[City]: The Court, please, I'll object to that and ask that that be stricken. There is no evidence regarding Dr. Carlson with
regards to any bills and certainly any balance.



[Acuña's counsel]: The only reason there wasn't, Your Honor, is because I was --



[Court]: At this point sustained.



[Acuña's counsel]: All right.

 

Q [Acuña's counsel]: Do you know whether or not --

May I inquire as to his knowledge about any prior balance, Your Honor?



[Court]: Yes.



[Acuña's counsel]: Thank you.



Q [Acuña's counsel]: Do you know whether or not there was a balance owed to Dr. Carlson for the services he provided to
you? 

Let me rephrase that. Do you know whether or not Dr. Carlson was owed money for the treatments that he gave you?



A: Yes, sir.



Q: And was there, in fact, money owed to him?



A: Yes, sir. 



Q: As far as you know, did the City ever offer to pay that?



A: No, sir.



Q: You had an MRI in 1990 and in 1993. As far as you know, did the City ever offer to pay for those?



A: No. 



Section 7 of former article 8306 requires an insurer to furnish all medical services as may reasonably be required to cure
and relieve an employee from the effects naturally resulting from his injury, but section 5 of former article 8307 prohibits
the rendition of an award of judgment for future medical expenses in a workers' compensation case. Hartford Underwriters
Ins. Co. v. Burdine, 34 S.W.3d 700, 708 (Tex. App.-Fort Worth 2000, no pet.) (citing Employers Mut. Cas. Co. v.
Poorman, 428 S.W.2d 698, 701 (Tex. App.-San Antonio 1968, writ ref'd n.r.e.)). Specifically, section 5 states that no
award or judgment against an insurer may include any medical cost or expense that has not been actually furnished to and
received by the employee prior to the date of the judgment. Id. 

To recover medical expenses, a claimant must prove the charges incurred were "reasonable and necessary." National
Union Fire Ins. Co. v. Wyar, 821 S.W.2d 291, 297 (Tex. App.-Houston [1st Dist.] 1991, no writ). An affidavit may serve
as sufficient evidence to support a finding of fact by judge or jury that the amount charged was reasonable and necessary.
Id. 

Testimony of an injured party concerning medical expenses incurred or paid is admissible. Home Indem. Co. v. Eason, 635
S.W.2d 593, 595 (Tex. App.-Houston [14th Dist.] 1982, no writ). However, such testimony, alone, does not establish the
expense is reasonable and necessary. Id. Without such a showing, there can be no recovery. Id. (citing Gerland's Food
Fair, Inc. v. Hare, 611 S.W.2d 113, 117 (Tex. App.-Houston [1st Dist.] 1980, writ ref'd n.r.e.)). 

Here, the record contains no affidavits or other evidence establishing that the amounts claimed as owing to Drs. Carlson,
Krishnan and Tijerina were for reasonable and necessary medical expenses. We conclude there is no evidence to support
the jury's award of $83,560.50 as reasonable charges for health care services. We sustain the City's second issue.

We REVERSE the trial court's judgment, in part, as to the award of $83,560.50 in accrued medical expenses; RENDER
judgment, in part, that appellee be awarded no accrued medical expenses; and otherwise AFFIRM the judgment. See Tex.
R. App. P. 43.2. 



 

LINDA REYNA YAÑEZ

Justice







Do not publish. Tex. R. App. P. 47.3.



Opinion delivered and filed this the

12th day of July, 2001.

1. Retired Justice Melchor Chavez assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to
Tex. Gov't Code Ann. §74.003(Vernon 1998).

2. Because Acuña's injury occurred in 1985, this case is under the "old" workers' compensation act. See Act of May 26,
1981, 67th Leg., R.S., ch. 324, § 1, 1981 Tex. Gen. Laws 3290, 3290 (Tex. Rev. Civ. Stat. Ann. art. 8306, § 10), repealed
by Act of Dec. 12, 1989, 71st Leg., 2nd C.S., ch. 1, § 16.01(7), 1989 Tex. Gen. Laws 1, 114; Act of Mar. 6, 1969, 61st
Leg., R.S., ch. 18, § 4, 1969 Tex. Gen. Laws 48, 49 (Tex. Rev. Civ. Stat. Ann. art. 8306, § 11), repealed by Act. of Dec. 12,
1989, 71st Leg., 2nd C.S., ch. 1, § 16.01(7), 1989 Tex. Gen. Laws 1, 114. 


3. The judgment awarded Acuña $81,403.00 of accrued benefits of 401 weeks from April 18, 1995 and $42,584.48 in
accrued interest at 4% per annum. 

4. The note is identified in the record as Plaintiff's Exhibit No. 20. 

5. Dee Decker was personnel coordinator for the City at the time of Acuña's injury. 

6. The invoices are designated as Plaintiff's Exhibits 8, 9, and 10 respectively.